H. J. HOLST et al., Appellees, v. CONSOLIDATED INDEPENDENT SCHOOL DISTRICT OF CUSHING, Appellee; A. H. BULLOCK et al., Appellants.

CONSTITUTIONAL LAW: Obligation of Contracts—Limitation on
1 Municipal Debts—Construction of Contract. The specific amount for which a municipal corporation obligates itself in a written contract for the construction of a schoolhouse in return for the contractor's agreement to "provide all the material and perform all of the work," etc., is in no wise lessened by a contract clause that said price "includes five thousand dollar figure for millwork."

EVIDENCE: Parol as Affecting Writings—Third Parties. Principle
2 reaffirmed that, as between persons who are not parties to a written contract, parol evidence is admissible to prove what in fact was the actual contract.

CONSTITUTIONAL LAW: Obligation of Contracts—Municipal Debt
3 Limitation—What Constitutes a Debt. A contract between an architect and a municipal corporation, which contract imposes a financial obligation on the corporation *only* in case the corporation enters into a further contract for the erection of the building which the architect has planned, is properly classified as a liability of the corporation's from the moment the building contract is entered into. So held on the issue whether the municipal debt was in excess of constitutional limitation.

CONSTITUTIONAL LAW: Obligation of Contracts—Municipal Debt
4 Limitation—Tax as Asset. In the marshaling of the assets and liabilities of a municipal corporation on the issue whether the debts of the corporation are in excess of constitutional limitation, a duly levied and collectible tax must be deemed a municipal asset, in the absence of proof showing the definite purpose of the tax and, if for

current expenses, that legal obligations have been or necessarily will be created, sufficient to offset said tax fund.

STEVENS, J., dissents.

Headnote 1: 35 Cyc. p. 973.  Headnote 2: 22 C. J. pp. 1292, 1293. Headnote 3: 35 Cyc. p. 973.  Headnote 4: 35 Cyc. p. 975.

Headnote 2: L. R. A. 1916A, 592; 10 R. C. L. 213.  Headnote 3: 19 R. C. L. 979.

*Appeal from Woodbury District Court.*—A. O. WAKEFIELD, Judge.

DECEMBER 16, 1926.

REHEARING DENIED MARCH 11, 1927.

Action by certain taxpayers to enjoin the issuance and payment of certain school warrants on the ground that they exceed the constitutional limit of indebtedness.  The court entered a decree enjoining the payment of warrants to the amount of $12,640.81.  Certain officers and interveners appeal.—*Reversed.*

*Miller, Kelly, Shuttleworth & McManus, Burgess & Gill, Comfort & Comfort,* and *Naglestad, Pizey & Johnson,* for appellants.

*Clark & Clark* and *Kindig, McGill, Stewart & Hatfield,* for appellees.

FAVILLE, J.—This action is brought to enjoin the officers of the Consolidated Independent School District of Cushing from issuing or paying school warrants in excess of the constitutional limitation of indebtedness of school corporations.  The interveners hold certain warrants that have been issued by said school district.  The school district entered into a contract with Kucharo & Company for the construction of a school building.  This was on March 26, 1920; and the question for determination is whether or not, on said date, and at the time of the execution of said contract, the indebtedness of the said school district, including that created by said contract, exceeded the constitutional limit.  Section 3 of Article 11 of the Constitution of Iowa is as follows:

"No county, or other political or municipal corporation shall be allowed to become indebted in any manner, or for any purpose, to an amount, in the aggregate, exceeding five per centum on the value of the taxable property within such county or corporation—to be ascertained by the last state and county tax lists, previous to the incurring of such indebtedness."

The burden is upon the plaintiffs to establish their contention that the indebtedness sought to be enjoined in whole or in part is in excess of the constitutional limit. *Trindle v. Consolidated Ind. Sch. Dist.*, 200 Iowa 370. Certain items of liabilities and assets of the said school district are undisputed. The trial court fixed the total indebtedness of the school district on March 26, 1920, at $251,659.69. The total assets, the court fixed at $125,642.08. It is undisputed that the actual assessed value of the property in the school district was $2,267,536, and that 5 per cent of that amount is $113,376.80. The court made a tabulation of the liabilities and assets, which will be of help in understanding the fact questions presented on this appeal, as follows:

*Liabilities.*

| | |
|---|---|
| Bond issue | $107,000.00 |
| Interest on bond issue | 2,169.74 |
| Outstanding warrants on the schoolhouse fund | 4,487.50 |
| Warrant to W. E. Hulse & Company | 3,965.82 |
| Balance due on the schoolhouse site | 4,010.00 |
| Balance due on the Hulse contract | 2,690.18 |
| Warrants outstanding on the general fund | 14,200.79 |
| Deficit in the general fund on July 1, 1919 | 1,691.66 |
| Kucharo contract | 111,444.00 |
| | |
| Total liabilities | $251,659.69 |

*Assets.*

| | |
|---|---|
| Balance in the schoolhouse fund July 1, 1919 | $ 3,707.51 |
| Receipts of the schoolhouse fund, July 1, 1919, to March 26, 1920 | 13,622.94 |
| Balance of the bond fund in the hands of Bechtel & Company | 97,000.00 |
| Accrued interest due from Bechtel & Company | 1,966.94 |
| Receipts July 1, 1919, to March 26, 1920, general fund | 5,647.69 |

Actual value of school buildings and school sites
available for sale as determined by sales made
thereafter                                          3,697.00

Total assets                                    $125,642.08

Leaving the net indebtedness                    $126,017.61
Deducting from this amount the constitutional limit
of indebtedness of                               113,376.80

Leaves an excess over the constitutional limit of in-
debtedness of                                   $ 12,640.81

Certain of the items of liabilities and assets as found by the trial court are challenged. At the outset, it is conceded that there are two clerical errors, and that the item of outstanding warrants on the schoolhouse fund should be $4,055, instead of $4,487.50, and that the balance due on schoolhouse site should be $4,410, instead of $4,010.

I. The first question that we consider is the amount of indebtedness that was incurred under and by virtue of the Kucharo contract. Said contract provides:

"The contractor agrees to provide all the materials and to perform all the work included in the general contract for the school building of the above-mentioned district."

The contract contains the further recital:

"The owner agrees to pay the contractor in current funds for the performance of the contract one hundred eleven thousand four hundred forty-four and no-100.........($111,444.00) subject to additions and deductions as provided in the general conditions of the contract and to make payments on account thereof as provided therein, as follows: * *. * The above contract price includes twenty-five thousand dollars of equipment. Includes five thousand dollar figure for millwork."

The words "includes five thousand dollar figure for millwork" were, as we understand, written with pen and ink in the typewritten form of contract. The trial court fixed the total

1. CONSTITUTIONAL
LAW: obliga-
tion of con-
tracts: limi-
tation on muni-
cipal debts: con-
struction of
contract.
amount named in said contract, to wit, $111,444, as indebtedness of the corporation on said date. Appellants contend that the court erred in fixing said amount, their contention being that the provision of $5,000 for millwork was contingent and conditional, and should not be included as the debt of the corporation under said contract. Regarding said item of $5,000, the contractor testified:

"It means that there was $5,000 set aside for the purchase of the millwork; and if it should cost more or less, it would be added or deducted, whichever the case may be; and of course if it was entirely cut out, why, there would be a $5,000 credit for it. The school board reserved the right to entirely eliminate the millwork from this contract, and if it was eliminated, it was at perfect liberty to take out the entire millwork, if they had seen fit to do so. The architect later negotiated for the purchase of the millwork, and brought the contracts for me to sign them after he had made arrangements with T. W. McClellan to buy the millwork from them. I had nothing to do with the purchase of the millwork."

A member of the school board testified regarding said matter:

"The language in the Kucharo contract, Exhibit C, which is inserted in it, and reads, 'includes $5,000 figure for millwork,' I can explain. It is ordinarily impossible to get a bid on millwork for a longer period than thirty days. The mills will give you figures for thirty days only. In 1920, they did not give you figures on anything, or any material, only on the day of delivery. For that reason it was impossible for anybody to ascertain, a few months ahead, what the price for the millwork for that schoolhouse would be, and is the reason we desired to set aside $5,000 for millwork. That would have about bought it at the time the contract was let, providing we could have bought it then; but after the contract was let, prices started to go up, and by the time we were ready to buy and use it, $5,000 would not quite cover it. It cost us a little more than $5,000. There was nothing in the Kucharo contract that bound us to buy the millwork at all. That was left entirely optional with the school board as to when and how and in what manner it should be bought."

As between the plaintiffs and the interveners, neither of whom were parties to the written contract, parol evidence was admissible to prove what in fact was the actual contract between **2. EVIDENCE: parol as affecting writings: third parties.** the parties. *Peters v. Goodrich*, 192 Iowa 790, and cases therein cited. We do not think, however, that the oral testimony was sufficient to modify the express terms of the contract with regard to the fixing of the amount of indebtedness incurred thereunder. By Article 1 of the contract, the contractor agreed to "provide all the material and perform all of the work included in the general contract for the school building." There is a recital that "the above contract price includes $25,000 for equipment." Immediately following this is the clause in question, "includes $5,000 figure for millwork." We think the contract is plain that the total amount provided for in the contract includes $25,000 for equipment and $5,000 for millwork. One is as much a part of the contract as the other, and both are included in the provisions of the contract which require the contractor to provide all the material and perform all of the work for the total sum of $111,444. When the contract is construed as a whole, the contractor bound himself to furnish all the material and perform all the labor for the construction of the school building according to the contract, including $25,000 for equipment and $5,000 for millwork. Under this contract, the school district could have held the contractor to furnish the equipment and the millwork to complete the building for the total amount of $111,444; and, on the other hand, the contractor, having performed all of his contract and having furnished the equipment and the millwork, would have been entitled to $111,444 from the school district. The parties to the written instrument were bound by its terms, and it could have been enforced at the option of either party as it was written. The district, by said contract, incurred a liability or indebtedness to the contractor of $111,444. It may be true that, by a specification of the items of equipment and millwork, some measure of damages would be furnished if the contractor failed to furnish said items; but the contract required the contractor to furnish said items, and they were included as part of the items in the total contract of $111,444.

If the admissibility of the parol evidence above quoted as between the parties to this action be conceded, it does not change

the result. The bills for the millwork were approved by the contractor, and, as we understand the record, payments for the same were made to the contractor under the contract. This was a practical construction of the contract according to its express provisions.

We reach the conclusion that the amount specified in the contract was properly the debt of the corporation on the day it was signed.

II. Hulse & Company were the architects employed by the school district to draw the plans and specifications for the building. The contract with Hulse & Company was not in evidence, and it was stipulated between the parties that, sometime during the year 1919, a contract was entered into between the school district and Hulse, which was in its terms conditional, and involved no obligation upon the school district to pay at all, except and unless a contract was eventually entered into by the school district for the construction of the school building; and in the event that such contract for the construction of the school building was made, then Hulse & Company should receive 3 per cent of the cost of the building for furnishing the plans and specifications, and 2 per cent for supervision. It was agreed that the plans and specifications furnished by Hulse & Company were accepted by the school district, and were the plans upon which the contract was let to Kucharo. On the day that the contract was let to Kucharo, a warrant of $3,965.82 was issued to Hulse, and there became due under his contract the further sum of $2,690.18. The trial court allowed both of said items as indebtedness of the school corporation. It appears from the record that the warrant of $3,965.82 was dated March 25, 1920. The indebtedness under the Hulse contract became fixed, by its terms, simultaneously with the execution of the Kucharo contract. The amount that was to be paid the architect, Hulse, was fixed and determined. It is true that whether it should become an indebtedness or not was conditioned upon the school district's entering into a contract for the construction of the school building. The condition was that the amount was not to become due "except and unless" the construction contract was entered into. The execution of the Kucharo contract *ipso facto* fixed and determined the Hulse indebtedness at that instant,

**3. CONSTITUTIONAL LAW: obligation of contracts: municipal debt limitation: what constitutes a debt.**

without any further arrangement or agreement between Hulse and the school district. We are of the opinion that, under these circumstances, the court did not err in including the indebtedness to Hulse as an item of outstanding indebtedness to the school district at said date.

III. The trial court fixed the value of the school buildings and school sites available for sale at $3,697, which is the amount that said school sites actually brought at sale thereafter made. Appellants contend that there was error in this, because of the evidence of opinion witnesses, fixing the value of the said school sites on the date in question at a larger sum, to wit, $7,700. Some of the school sites were not sold until considerable time after March 26, 1920. The evidence with regard to the value of the various sites was necessarily opinion evidence. There is nothing in the record to suggest that the actual sales made were not for the highest price obtainable. Competency of some of the expert witnesses to testify with regard to the value of the respective sites on the date in question is, to say the least, doubtful. Upon the entire record, we are disposed to acquiesce in the conclusion of the trial court, fixing the value of the sites at $3,697.

IV. It appeared in the record that taxes were levied in 1919, payable in 1920, belonging to said school district, amounting to $16,664.35. A portion of this money was levied for the

4. CONSTITUTIONAL   schoolhouse fund, and a portion for the general
LAW: obliga-
tion of con-          school fund; but the exact amount in each is not
tracts: munici-
pal debt limi-       clearly shown. The testimony of the treasurer
tation: tax as
asset.               is that, in the year 1920 to 1921, the general fund
was overdrawn, and that there was a deficit in the running expenses of the school district from the 26th of March, 1920, to April 1, 1921, of $6,809.64. It appears that there was also a deficit in the current expenses for the year of 1921. The point made by the appellants is that this item of $16,664.35 of taxes which had been duly levied, and which were collected or collectible on March 26, 1920, was assets of the corporation, which should properly be figured as such in the schedule of assets, and that the trial court erred in not so doing. As before stated, the burden in this action rested upon the appellees, to establish their contention that the indebtedness, the payment of which they sought to enjoin, was illegal, in that it exceeded the

constitutional limit of indebtedness. It therefore became the outstanding question in the case to establish the indebtedness of the corporation on the day in question, and also all of its available assets. Unquestionably, the taxes which had been levied and which were due and collectible were assets belonging to the corporation, proper to be computed with the other assets of the corporation, as though they were cash in the treasury, subject to proper offsets. See *Rowley v. Clarke*, 162 Iowa 732.

The question has heretofore been before this court, where it has been contended that *debts* incurred for current expenses of the year are not proper to be considered as a liability of the corporation, because of the fact that the incoming taxes are regarded as already in the treasury, and contracts made upon the strength thereof are deemed cash transactions. In the instant case, we have the peculiar situation that the appellees offered no proof whatever of any contracts or obligations for current expenses, notwithstanding the fact that the record affirmatively showed that taxes to the amount of $16,664.35 had been levied and were available. It does not appear for what purpose these taxes were levied. In the *Trindle* case, supra, the evidence showed that the total expense of the district for the current year would be $21,502. We held that obligations incurred for such current expenses in anticipation of taxes which were in course of collection or certain to be collected did not constitute a debt, within the meaning of the Constitution. In said case it affirmatively appeared that the indebtedness for current expenses claimed by the appellant in said action as a part of the total outstanding indebtedness of the district was properly offset by the affirmative showing that said indebtedness was fully provided for by the uncollected revenue, and that such indebtedness represented current expenses, to be paid out of said revenue. Such is not the situation in the instant case. The amount of available taxes is proven to be $16,664.35. Against this item the appellee offered no proof whatever of any outstanding indebtedness for current expenses, nor any evidence of the amount required for current expenses to be taken out of this fund. Undoubtedly, if the school was in operation, there were obligations then outstanding or necessary to be incurred for teachers' salaries, coal bills, and other proper items of general expenses which would be met by the collectible taxes in question. The appellees ask the court

to assume that the amount of such outstanding current expenses would equal or exceed the amount of such collectible taxes. The only evidence on which we can base such an assumption is the testimony of the school treasurer that:

"There was a deficit in the running expenses of the independent school district from the 26th of March, 1920, to April 1, 1921. The amount was $6,809.64."

This evidence, however, is not sufficient to support the contention of the appellees that the item of $16,664.35 was all absorbed by outstanding liabilities for current expenses for the year 1920. We cannot assume, without proof, that there were such current expenses, and the amount thereof; and, upon the record as made, we think it must be held that the said sum of $16,664.35 should have been computed by the trial court as an available asset of the school district at the time. This being true, there was no proof that the indebtedness of the school district exceeded the constitutional inhibition, and the court erred in enjoining the issuance or payment of any of the warrants involved in this case. The decree must, therefore, be—*Reversed*.

DE GRAFF, C. J., and EVANS, VERMILION, and ALBERT, JJ., concur.

STEVENS, J., dissents.

STEVENS, J. (dissenting in part).—As stated in numerous cases cited in *Trindle v. Consolidated Ind. Sch. Dist.*, 200 Iowa 370, warrants issued for current expenses do not constitute a debt, within the meaning of the constitutional limitation. Therefore, taxes levied for current expenses cannot be considered in determining, in a given case, whether the indebtedness of the corporation exceeds the constitutional limit. It will be presumed that taxes levied to defer current expenses will be so used. I agree that the majority opinion would find support as to the burden of proof as to current expenses in the *Trindle* case, if it were not, as I conclude, that what is there said is pure dictum. The evidence in the *Trindle* case showed the expenditure of the taxes collected. In my opinion, the rule should be that, when the defendant shows an amount levied for current expenses, he has met the full requirement of his case.