W. T. Madden Company, Incorporated, Appellant, v. F. Becker Asphaltum Roofing Company, Appellee.

March 13, 1928.

*I. H. Tomlinson,* for appellant.

*John McLennan,* for appellee.

Morling, J.—Defendant in argument does not claim enforcement of mechanic's lien, but rests its case upon an alleged agreement by plaintiff to pay the balance of the cost of the roof for which the lien was filed. Plaintiff corporation, through W. T. Madden, its president, sold the premises in controversy to Donohoe, on written contract, by which the price was made payable in monthly installments. The premises at the time of the sale were out of repair. Over plaintiff's objection that the testimony tended to vary the terms of the written contract, and was contrary to the statute of frauds, Donohoe was permitted to testify that, while they were negotiating the contract, he told Madden that the home was in a very poor state of repair (mentioning a number of particulars, but not mentioning specifically the roof), and that plaintiff said to him, "to go ahead and repair what I could myself, and have it fixed, what was beyond me to fix. To have it fixed." The written contract makes no

provision for repairs or improvements. Under agreement between defendant and Donohoe, defendant furnished a new roof for $150, of which Donohoe paid $55, leaving unpaid $95, for which this counterclaim is made. Donohoe kept up his monthly payments for a time, and then, as he testifies, told Madden:

"I began to see I could not keep up the payments. It was beyond me altogether. In fact, I told him three or four times, and I told him that I thought it would be nothing more than fair, after the repairs I had put on, if he would pay—finish paying for the balance of the roof. I had paid $55, and he told me he would finish that, if I would continue to live right on, and he turned to me, after I had signed the paper, and said, 'The purpose of my having you sign these papers is that I can put you out in three days, if you get back at all.' "

Donohoe says that, when he first moved into the house, plaintiff told him that, in the event he was unable to make payments, "I could continue to live in the house, just the same as I could pay rent." The paper that Donohoe signed seems to have been an acceptance of service of notice of cancellation, July 31, 1926. Donohoe continued to live there until October 22, 1926. He paid the rent. Defendant's manager testifies that, in June or July, 1926, Donohoe's wife had left word that plaintiff would finish paying for the roof; that he saw Madden, and "told him that Donohoe had sent me up there, and that we understood that he was going to finish all payments on the roof. He told me at that time he never had any trouble with anybody when they had a lien on a piece of property of his,—he had always been able to settle; and told me to go ahead and collect what I could from Donohoe, and that we would get together and straighten up the balance; * * * That we would get together and settle up the rest of it."

Madden testifies that he "never agreed to pay for any roofing; there was nothing in the contract of any agreement. I told him—he wanted to know about signing that—and I told him that would release him from any further obligation on my contract; just simply cancel it and release it. I did not agree to pay for any repairs on the building that he had a contract for. He made quite a bit of the repairs himself. I will admit the house was in bad shape, but he paid for this himself. I did not

know about this contract with Becker for the roof before it was entered into by Donohoe.''

Madden says that defendant's manager ''wanted me to pay the balance of it, and I told him that I didn't order any roof of him, and I paid my debts,—paid for anything I bought,—but I didn't like to pay for something I hadn't bought. I did not state to him that I would pay that, or any part of it. * * * He didn't tell me that I had agreed with Donohoe to pay the balance of that roof. I never told him that I didn't want any trouble over a roof or any improvement on my property. I never promised to pay for any roof. I told him I usually paid for the things that I bought, and not what somebody else bought.''

Defendant was not a party to the written contract. The parol-evidence rule is not applicable. *Peters v. Goodrich*, 192 Iowa 790; *Holst v. Consolidated Ind. Sch. Dist.*, 203 Iowa 288; 22 Corpus Juris 1292.

The object of plaintiff's promises to Donohoe was, first, to make sale to Donohoe, and to have the needed repairs made on plaintiff's property. The object of the second promise was to amicably terminate Donohoe's rights under the contract, and to get Donohoe to continue to make his payments as rent. Each promise was to Donohoe, not to the creditor, and each was itself an original and primary one, made by plaintiff to its own promisee, in the process of negotiating its own contracts. Neither of them was collateral. Neither was within the statute of frauds. *Peoples State Sav. Bank v. Cross*, 197 Iowa 750; *Richmann v. Beach*, 201 Iowa 1167; 27 Corpus Juris 132; *Frohardt v. Duff*, 156 Iowa 144; *Merchant v. O'Rourke*, 111 Iowa 351. Plaintiff does not dispute that the promises to Donohoe, having been made for the benefit of defendant, are enforcible by defendant. The evidence of plaintiff's promise to defendant is corroborating and confirmatory. The testimony shows the existence of an agreement between Donohoe and plaintiff that plaintiff would pay the balance of the cost of the roof. Plaintiff questions the mechanic's lien only on the ground of want of authority in Donohoe to bind the property. To save any future controversy, however, the decree will be modified so as to provide that satisfaction of the judgment shall operate as satisfaction of the mechanic's lien, and that when the judgment is satisfied the

clerk of the district court shall enter satisfaction of the lien.—
*Modified and affirmed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ.,
concur.