WHEELER LUMBER BRIDGE AND SUPPLY COMPANY, appellee, v. RAY ANDERSON, appellant.

No. 49312.

(Reported in 86 N.W.2d 912)

DECEMBER 17, 1957.

REHEARING DENIED FEBRUARY 14, 1958.

Tolbert C. Moore and Harold W. Bracewell, both of Des Moines, for appellant.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellee.

SMITH, J.—The evidence tends to show that sometime not long prior to January 25, 1956, defendant, as a representative of Weather Insulating Window and Door Company (hereinafter called the "Insulating Company") approached plaintiff to sell the Insulating Company a carload of lumber upon credit. Plaintiff is a wholesale lumber dealer in Des Moines. The Insulating Company was a Des Moines concern, conservatively described by its officer as "financially not very heavy."

Plaintiff looked up its credit rating and refused to extend the requested credit. Thereupon, according to the testimony of plaintiff's vice-president in charge of sales, James M. Hoak, defendant said " 'I will pay for this car of lumber or you may look up my credit.' I told him that was the only way that I could sell it. I didn't know whether he had credit or not since I had never met him, but if he would give me the name of his bank I would check with them and find out whether he was what we considered a good credit risk."

Mr. Hoak says he talked with defendant and S. F. Paulsen, an officer of the Insulating Company, as to its not having a

credit established—"other people were selling them on cash and I would have no reason to sell them anything on credit on the credit rating that the company had."

Mr. Hoak says they discussed defendant's "ability to pay and what he was going to do, what his position with the company was and he told me * * * that he was going to assume their bills and he would pay their bills, and I said on that basis if he had the proper credit * * * I would sell the material to him and he would have to guarantee the account, which he agreed to do after giving me the name of his bank."

They discussed the size and grade of lumber desired. Mr. Hoak further says they investigated defendant's credit standing and after doing so were willing to sell the Insulating Company "on his promise to pay the bill."

Mr. Hoak says after he prepared the "sales order" he went to the Insulating Company's place of business where he met both defendant and Paulsen—"I told them I would be able to fill the order provided Mr. Anderson would pay for it." He also testifies: "I would not have sold it to Weather Insulating Window and Door Company without Mr. Anderson's agreement to pay."

After the lumber was shipped to and received by the Insulating Company, Mr. Hoak talked to both defendant and Paulsen and told defendant "I would like to have a check within 10 days, since our terms were 2% discount within ten days, and he agreed to take this discount and said * * * 'I will send you a check right away.' "

While this is a law action and we are concerned only with the sufficiency of the evidence to justify submission to the jury, it is interesting to note Mr. Paulsen's testimony as a witness for plaintiff. He identifies a written contract between the Insulating Company (first party) and defendant, dated September 13, 1955, by which defendant "agrees to make advances of funds or credit to First Party as are needed to cover the cost of material and labor used in the operation of First Party's business * * *. That said material may be purchased in First Party's name and thereafter the title to said material so purchased shall be transferred to Second Party [defendant] * * *."

The instrument is quite long and we cannot set it out in full. Much of it would be irrelevant here.

Mr. Paulsen identified the "Sales Order" for a sale by plaintiff to the Insulating Company, dated "1/27/56." Plaintiff-company signed by Mr. Hoak and the Insulating Company by defendant. But Paulsen is vague as to defendant's personal oral agreement. However, his testimony does not contradict Mr. Hoak's on that point and does tend to substantiate that defendant was assuming personal responsibility, at one time saying " 'I will see that you get your money.' " This was when he signed the "sales order." His testimony reveals too that Mr. Hoak would only extend the credit if defendant was obligated.

The record also shows a "duplicate invoice" from plaintiff to the Insulating Company, and several "statements of your account" (dated respectively "Feb. 29, Mar. 30, Apr. 30, and June 30, 1956"); also a letter, July 3, 1956: "We haven't heard from you folks in a long time and are wondering just what the situation is * * *."

This action was filed April 10, 1956, trial resulted in a verdict for plaintiff in the sum of $3419.32. Motion for judgment notwithstanding verdict was overruled and this appeal followed.

I. Four "propositions for reversal" are posed by defendant. But we deem the real reliance to be upon the statute of frauds; and the real question whether it applies to an oral promise to stand good for the debt or default of another, made *before* the debt arises, and where the credit is expressly extended upon the faith of such promise. There is ample evidence here to support the verdict unless it be inadmissible because of the statute. Defendant did not testify.

The action is at law and we shall spend little time on the sufficiency of the evidence to support the verdict unless the statute makes the oral testimony incompetent.

Code section 622.32, Iowa Code 1954, so far as material here, provides:

"Except when otherwise specially provided, no evidence of the following * * * contracts is competent, unless it be in writing and signed by the party to be charged * * *:

"1. * * *

"2. Those wherein one person promises to answer for the debt * * * of another * * *."

The language is quite familiar to the legal profession and has been the subject of much litigation.

II. Much has been written as to the nature of the statute as worded here—the usual form. Is it substantive or remedial? That discussion is not material here however. We need not debate whether the contract is rendered void if not in writing or is merely unenforceable. If "no evidence is competent unless it be in writing" and there be only evidence of an oral contract, the one trying to enforce it against an unwilling antagonist is in trouble in either case.

Our problem here is the question of the nature of the claimed contract. Is it one to answer for the debt or default of another? The courts have quite generally adopted the terms "original" and "collateral" as describing the contracts that are and are not enforceable respectively. We seem to have adopted those terms and they are perhaps as expressive or explanatory as necessary in most instances. See Kladivo v. Melberg, 210 Iowa 306, 314, 227 N.W. 833; W. T. Madden Co. v. F. Becker Asphaltum Roofing Co., 205 Iowa 783, 218 N.W. 466; Richmann v. Beach, 201 Iowa 1167, 1168, 206 N.W. 806. See generally 37 C. J. S., Statute of Frauds, section 16; 49 Am. Jur., Statute of Frauds, section 89. Annotation X, 8 A. L. R. 1211; 52 A. L. R. 792; 67 A. L. R. 508.

We find in 49 Am. Jur., Statute of Frauds, section 61, note 5, page 417, a citation to Wahl v. Cunningham, 320 Mo. 57, 6 S.W.2d 576, 67 A. L. R. 489, to the effect that while the terms "original" and "collateral" as applied to a promise do not appear in the statute it has "become thoroughly established by the great weight of judicial authority that if the promise or agreement is an original and independent undertaking * * * by which the promisor makes or creates a primary and direct debt or obligation of his own, it is not within the purview of the statute and need not be evidenced by a writing or memorandum signed by the promisor."

From an early day our court has consistently held to the proposition that "where the promise to pay the debt of another arises out of some new and original consideration of benefit *or harm* [emphasis supplied] moving between the newly contracting parties, the case is not within the statute." Johnson v.

Knapp, 36 Iowa 616, 617; Marr v. Burlington, C. R. & N. Ry. Co., 121 Iowa 117, 96 N.W. 716; Cedar Valley Mfg. Co. v. Starbard (1902), Iowa, 89 N.W. 14; Lessenich v. Pettit, 91 Iowa 609, 60 N.W. 192. See the still earlier case, Tarbell v. A. J. Stevens & Co., 7 (Clarke) Iowa 163.

The Johnson v. Knapp case, supra, also explains: " 'Whenever the main purpose of the person promising is not to answer for the debt of another, but to subserve some object of his own, the promise is not within the statute of frauds, although, in form, it may be a promise to pay another's debt; and although, incidentally, the performance of it may have the effect of extinguishing the liability of another.' "

It should be pointed out that opinion makes clear the "new and original consideration" may be "of benefit or harm." While the contract here is supported by an ample showing that defendant was interested in the Insulating Company (the nature and extent of such interest need not be specified) it is clear there was "an original consideration of harm" in the burden assumed by plaintiff—a burden it refused to assume for the Insulating Company. It was the original contract.

III. Defendant's first specification of error is that the trial court failed to recognize defendant, in the entire transaction, was acting as agent of the Insulating Company, and not in his individual capacity. It overlooks or ignores what we deem convincing evidence that defendant was acting in a dual capacity; we might even say overwhelming evidence, were we charged with the duty of determining the weight of evidence, which of course we are not.

An agent, while acting for his principal, may personally obligate himself to a third person with reference to the matter he is handling for his principal. Sultzer v. Lutz, 184 Iowa 1031, 169 N.W. 341.

"Although his agency is known, his principal disclosed, and his authority adequate, an agent may, by express promise or undertaking, or by implication from words or conduct, exclusively pledge his own credit." 3 C. J. S., Agency, section 215c. Here defendant did so by express promise.

Defendant had already, in writing, agreed with the Insulat-

ing Company to use his credit for its benefit. We have no doubt on this record that he intentionally did just that on this occasion by an original, direct pledge of his credit to plaintiff. It was not collateral to any contract between plaintiff and the Insulating Company, though the lumber was charged to it on plaintiff's books. It was defendant's direct debt, not collateral to the Insulating Company's. Plaintiff had already refused to sell to it on its own credit.

We have made no attempt to distinguish or discuss the authorities cited by defendant, believing we have made clear the propositions upon which we rely. The decision of the trial court is affirmed.—Affirmed.

All JUSTICES concur.