**MARESH SHEET METAL WORKS,**
Appellee,

v.

**N. R. G., LTD. and Gordon G. Russell, Appellants.**

No. 64773.

Supreme Court of Iowa.

April 15, 1981.

Rehearing Denied May 7, 1981.

Jay H. Honohan, Honohan, Epley, Lyon & Kron, Iowa City, for appellants.

John M. Bickel and Thomas M. Collins, Jr., Shuttleworth & Ingersoll, Cedar Rapids, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK, and McGIVERIN, JJ.

LeGRAND, Justice.

This appeal raises the question whether evidence vital to establishing defendant's liability was barred under the statute of frauds, § 622.32, The Code 1977. We agree with the trial court that the challenged evidence was admissible and therefore affirm the judgment.

As originally brought, this action named N.R.G., Ltd., and Gordon G. Russell as defendants. Judgment by default was entered against N.R.G., Ltd., in the amount of $42,096.50. The case later went to trial on the claim against Gordon G. Russell alone. The only parties to this appeal are plaintiff and defendant Russell.

N.R.G., Ltd., is a solar energy plant incorporated in 1975. Russell holds a substantial stock interest in the company. For a time, he was president of the corporation and a member of its board of directors. Differences arose between Russell and the other corporate officers and directors. In June 1977, he was deposed as president, resigned as a director, and thereafter had no association with the corporation except that he continued as a stockholder.

Early in 1976 the plaintiff, Maresh Sheet Metal Works (Maresh), did some sheet metal fabrication work for N.R.G., Ltd., amounting to approximately $500. Some time later the corporation wanted Maresh to perform much more substantial services. However, the bill for the original job remained unpaid, and Maresh was unwilling to go ahead until suitable credit arrangements were made. Accordingly, defendant Russell and David Simms, general manager of N.R.G., went to Cedar Rapids, the home office of Maresh, to discuss credit arrangements.

■ Although the facts are in dispute, there is substantial support for the trial court's findings that Russell guaranteed payment of Maresh's account with N.R.G. The evidence shows Russell represented himself as a man of means, a successful businessman with good credit. He gave Maresh the name of his bank and the names of several creditors upon whom a check of his credit rating could be made. Based upon Russell's guaranty, Maresh undertook the additional work for N.R.G. Payments were made from time to time as the work progressed until about June 1977. Thereafter no payments were made. Eventually the account was closed out with an unpaid balance of $42,096.50.

I. The main issue on this appeal concerns whether evidence of Russell's parol guaranty is barred by the statute of frauds, § 622.32(2), The Code, which provides in part:

> Except when otherwise specifically provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by his authorized agent:
>
> 1. . . .
>
> 2. Those wherein one person promises to answer for the debt, default or miscarriage of another, including promises by executors to pay the debt of the decedent from their own estate.

If the statute renders evidence of the guaranty inadmissible, the judgment against Russell must be reversed. If, however, it is admissible as an exception to the statute, the judgment is supported by substantial evidence and the findings of the trial court must be sustained.

■ In construing section 622.32(2), The Code, we have distinguished between those oral promises which are collateral to an already existing contract and those which create an original or primary obligation of their own. The former are barred by the statute; the latter are not.

In 72 Am.Jur.2d, *Statute of Frauds*, § 226 at 749 (1974) this appears:

As in other cases involving a promise to answer for the debt, default or miscarriage of another, the courts in determining whether the promise of a stockholder, officer, or director of a corporation to pay a debt of the corporation is within the statute of frauds have for the most part stated their conclusion either that the promise was a "collateral" one and thus within the statute of frauds or that it was an "original" one which was outside the purview of the statute.

Later, at ¶ 227, page 752 we find this statement:

In many cases where an oral promise by a stockholder, officer, or director to pay for goods or articles furnished to the corporation was held to be original and thus not within the statute of frauds, on the ground that the promise was to secure some personal benefit to the promisor, the promise was made to a contractor or material man to induce him to continue performance of the contract after he had refused to perform on the ground of the failure of the corporation to pay him according to its contract. As a rule in these cases, the promise is held to be original, especially as to work performed and materials furnished subsequently to the promise.

*See also* 35 A.L.R.2d 906, 919 (1954).

■ Plaintiff relies heavily on *Wheeler Lumber Bridge & Supply Co. v. Anderson*, 249 Iowa 689, 693–94, 86 N.W.2d 912, (1958). The facts of that case closely resemble the present one. In *Anderson* the defendant personally told· the lumber company he would pay for a shipment of lumber if the corporation did not. It was only on this representation that credit was extended. Later, the same defense was made as is asserted here—the evidence concerning defendant's guaranty was barred by the statute of frauds. In discussing that issue we said:

From an early day our court has consistently held to the proposition that "where the promise to pay the debt of another arises out of some new and original consideration of benefit *or harm* [Emphasis supplied] moving between the newly contracting parties, the case is not within the statute."

This quotation reaffirms what has long been our rule as announced in *Johnson v. Knapp*, 36 Iowa 616, 617 (1873), from which most of it was taken. *See also Cedar Valley Mfg. Co. v. Starbard*, 89 N.W. 14, 15 (Iowa, 1902).

■ Applying these principles to the present case, we conclude Russell's promise was an original one, rather than collateral. Plaintiff had performed a small amount of work for N.R.G. When payment was not forthcoming, it refused to do any further work on the credit of the corporation. At that time, Russell entered the picture and personally guaranteed payment. The purpose of the guaranty was to assure N.R.G. a source of vital supplies and an established line of credit. Both were essential to the company's survival; neither was available without Russell's guaranty.

Maresh allowed N.R.G. to continue in business only because of Russell's promise, which clearly arose out of "some new and original consideration" moving between Russell and Maresh.

■ It would be more accurate, perhaps, to describe the promise made by Russell as an independent undertaking of his own rather than a promise to pay N.R.G.'s debt. However, such promises are generally classified as agreements to pay the debt of another because the services rendered and material furnished run to a third party. This case, we believe, comes under the doctrine of the "leading object" rule. When the guarantor's purpose—the leading object of his promise—is to secure some benefit or business advantage for himself, the matter does not come within the statute of frauds requiring the promise to be in writing. *Wachal v. Davis*, 164 Iowa 360, 363, 145 N.W. 865, 866–67 (1914); *Frohardt Bros. v. Duff*, 156 Iowa 144, 148–50, 135 N.W. 609, 611 (1912). *See also Farr & Stone Insurance Brokers v. Lopez*, 61 Cal.App.3d 618, 132 Cal.Rptr. 641, 642–43 (1976); *Jim & Slim's Tool Supply, Inc. v. Metro Communi-*

*ties Corp.,* 328 So.2d 213, 215 (Fla.App. 1976); 72 Am.Jur.2d *Statute of Frauds,* § 192 (1974); 2 Corbin Contracts § 366–68 (1950); Restatement (2d) of Contracts, § 184 (Tent. Draft Nos. 1–7, Rev. and Edit., 1973).

Whether a promise is collateral to an existing contract or creates a primary obligation on the part of the promisor is a question of fact. Here the trial court resolved the matter in favor of Maresh, and there was substantial evidence to support that result. We are therefore bound by it. Rule 14(f)(1), R.App.P.

II. There is one additional matter to be resolved. Russell claims he was entitled to notice of each item for which Maresh expected to hold him responsible. *German Savings Bank v. Drake Roofing Co.,* 112 Iowa 184, 190–91, 83 N.W. 960, 961 (1900); *John Deere Co. v. Babcock,* 89 Wis.2d 672, 278 N.W.2d 885, 886 (1979). Maresh counters by saying the guaranty was effective without such notice.

Before we consider this question, it will be helpful to decide if the guaranty is a restricted or continuing one. It is restricted if limited to a single transaction or to a limited number of specific transactions. It is continuing if it contemplates a future course of dealing over an indefinite period. *Union Trust & Savings Bank v. State Bank,* 188 N.W.2d 300, 302 (Iowa 1971); 38 Am. Jur.2d *Guaranty,* § 23 at 1022–23 (1968).

Relying on the facts recited in Division I, we are convinced Russell's guaranty was intended to cover a course of future dealings. It was a continuing guaranty, much like that discussed in *Bridgeport Malleable Iron Co. v. The Iowa Cutlery Works,* 130 Iowa 736, 743, 107 N.W. 937, 939 (1906).

We reach, then, the ultimate question: Was Maresh required to give Russell notice of each separate transaction with N.R.G.? Limiting our conclusion to the particular circumstances of this case, we hold such notice was not necessary. Russell was an officer and director of N.R.G. when the guaranty was given. He was active in the company management. As far as Maresh

knew, he remained in that capacity throughout. He should have been familiar with the affairs of the company. He should have known the extent of its dealings with Maresh. Russell relies on *John Deere Co., supra.* However, that case is so factually dissimilar as to be of little help. Furthermore it recognizes a distinction where, as here, there is a close relationship between the guarantor and the one for whom the guaranty is given. When read in its entirety, *John Deere Co.* is more helpful to Maresh than to Russell. *See also Fond Du Lac Skyport, Inc. v. Moraine Airways,* 67 Wis.2d 109, 114, 226 N.W.2d 428, 431 (1975); Annot., 6 A.L.R.3d 355, 396, 415 (1966); 38 Am.Jur.2d *Guaranty,* § 41 at 1040 (1968).

Neither does *German Savings Bank v. Drake Roofing Co.,* 112 Iowa 184, 190, 191, 83 N.W. 960, 961 (1900) offer support for Russell. Under similar facts, we believe it would have reached the same result we reach here.

The trend in recent cases has been away from any requirement of notice under a continuing guaranty unless the agreement specifically calls for it. *Bryant v. Food Machinery & Chemical Div.,* 130 So.2d 132, 135 (Fla.App.1961); *Fidelity Nat'l Bank of South Miami v. Melo,* 366 So.2d 1218, 1221 (Fla.App.1979); *Hassell-Hughes Lumber Co. v. Jackson,* 33 Tenn.App. 477, 232 S.W.2d 325, 329–30 (1949); 38 Am.Jur.2d *Guaranty,* § 99 at 1106–07 (1968). We believe this represents the correct view.

III. Russell also contends any guaranty should be held revoked because of his removal as president and his resignation as a director. He does not seriously dispute his obligation while serving as president and director, but he asserts that obligation ceased when he left managerial positions with the corporation.

A continuing guaranty remains valid until revoked or terminated by some rule of law. *Union Trust & Savings Bank v. State Bank,* 188 N.W.2d 300, 302 (Iowa 1971); *Cessna Finance Corp. v. Meyer,* 575 P.2d 1048, 1050 (Utah 1978); *Valley Nat'l Bank v. Shumway,* 63 Ariz. 490, 163 P.2d

676, 678–79 (1945); 38 Am.Jur.2d *Guaranty*, § 63 at 1064 (1968).

 Here there was no formal revocation. The question is whether Russell's withdrawal from management status operated as one. Limiting our ruling to the facts of this case, we hold there was no revocation. Maresh was not advised of Russell's demotion, and the record does not disclose it knew of his troubles with N.R.G. All attempts to contact Russell about the unpaid account met only with equivocation and evasion. We need not decide what effect such knowledge would have. *See Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 455 P.2d 31, 32–33 (1969); *Manufacturer's Finance Co. v. Rockwell*, 278 Mass. 502, 180 N.E. 224, 225 (1932). Without it there was no revocation. Russell's failure to revoke his guaranty left his status unchanged. There is no merit to Russell's argument to the contrary.

IV. Finding no reversible error in any of the issues raised, we affirm the judgment of the trial court.

AFFIRMED.