**INTERNATIONAL HARVESTER CREDIT CORPORATION, a Delaware Corporation, Appellee,**

v.

**Gerald A. LEADERS, Calvin Leaders, Dorothy Leaders, and Ardythe Leaders, Appellants.**

**No. 86–1897.**

United States Court of Appeals, Eighth Circuit.

Submitted March 10, 1987.

Decided May 8, 1987.

Rehearing Denied June 10, 1987.

Robert Kohorst, Harlan, Iowa and Allen K. Nepper, Denison, Iowa, for appellants.

Michael G. Helms, Omaha, Neb., for appellee.

Before McMILLIAN, BOWMAN and WOLLMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Calvin Leaders and Dorothy Leaders, husband and wife, and Gerald A. Leaders and Ardythe Leaders, husband and wife, appeal from a final judgment entered in the District Court [1] for the Southern District of Iowa in favor of International Harvester Credit Corporation (IHCC). IHCC brought this diversity action to enforce a guarantee agreement between appellants and IHCC. Appellants were found liable for $935,-826.64. For reversal appellants argue that

---

**1.** The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

(1) IHCC's claim on the thirteen-year-old guarantee agreement was barred by the statute of limitations, laches, waiver and estoppel; (2) the guarantee agreement was an unconscionable, and thus unenforceable, contract of adhesion. (3) there was an implied revocation of the continuing guarantee agreement, and (4) the district court erred in determining the amount of damages due. For the reasons discussed below, we affirm the judgment of the district court.

Calvin Leaders and Gerald Leaders are brothers. In 1961 they entered into a partnership to operate a farm implement business known as Leaders Implement Co. In 1969 or 1970, Leaders Equipment Company was incorporated. The only stockholders were Gerald Leaders and Calvin Leaders at the time the Leaders entered into a dealership agreement with the International Harvester Co. On January 22, 1970, an agreement was executed by Gerald and Ardythe Leaders and Calvin and Dorothy Leaders to guarantee the debts of Leaders Implement Co. Ardythe Leaders participated in the business of the leadership during 1982–1984; Dorothy Leaders never participated in the business.

On April 1, 1974, Calvin Leaders sold his stock in Leaders Equipment Co. to Gerald Leaders. Thereafter, Calvin Leaders and Dorothy Leaders were not shareholders, directors, or officers of the corporation, although Calvin Leaders continued to be employed by the corporation until it ceased operations in February 1983. Calvin and Dorothy Leaders concede that they did not formally revoke the guarantee agreement.

Gerald Leaders was the sole stockholder of Leaders Equipment Co. from 1974 to 1977; in 1977 he sold some of his stock to his son, Glenn Leaders. At that time Glenn Leaders also executed a guarantee agreement with IHCC. In addition, Gerald Leaders and Glenn Leaders entered into a new dealership agreement with International Harvester and IHCC. In 1979 IHCC obtained another guarantee agreement from Glenn Leaders.

The guarantee agreement in this case is a standard form agreement prepared by International Harvester Co. and IHCC, which International Harvester dealers must sign. IHCC had a policy, which was not strictly enforced, of obtaining new financial statements from its guarantors every two or three years. IHCC did not obtain updated financial statements from Calvin or Dorothy Leaders after 1970.

In accordance with the agreements between appellants and IHCC, IHCC provided floor plan financing for all new International Harvester equipment and for much of the used equipment carried by Leaders Equipment Co. in its inventory. Leaders Equipment Co. maintained a general account with International Harvester Co., which was assigned to IHCC. As Leaders Equipment Co. sold each piece of machinery, it was required to pay the individual note for that piece of machinery. IHCC conducted monthly inventories of its dealers to ensure that IHCC received payments on all items sold.

On January 19, 1983, IHCC conducted its periodic inventory of Leaders Equipment Co. and accounted for or received payment for all machinery and equipment for which it had provided financing. Approximately one month later, on February 22, 1983, IHCC conducted another inventory. On that date, equipment valued at more than $750,000 was missing from the premises of Leaders Equipment Co. Allegedly, Gerald and Ardythe Leaders, the operating officers of Leaders Equipment Co., refused to provide any assistance or accounting with respect to the missing equipment. As of February 1983, Leaders Equipment Co. owed IHCC in excess of $1,900,000.

Because of this "out of trust" condition, International Harvester Co. terminated the Leaders Equipment Co. dealership in February 1983. IHCC subsequently initiated a replevin action in Iowa state court to obtain possession of its collateral. During the course of the replevin proceedings, Leaders Equipment Co. filed a bankruptcy petition. The automatic stay provision of the bankruptcy code was lifted and the replevin proceedings continued to judgment in favor of IHCC. With the assistance of the sheriff, IHCC obtained possession of the re-

maining machinery and parts. After applying the proceeds from this equipment and other credits, Leaders Equipment owed IHCC $935,826.64. The bankruptcy proceedings were still pending at the time the parties filed their briefs.

Prior to the replevin proceeding, Gerald Leaders, in February 1983, had contacted Newark Truck & Tractor of Illinois (Newark Truck) and requested possession of a tractor, which Newark Truck purchased from Leaders Implement Co. The Iowa state court, in the replevin proceeding, granted possession of the tractor to IHCC. As a result, Newark Truck filed an interpleader action in Illinois state court in March 1986, naming IHCC, Gerald Leaders and Leaders Equipment Co. as defendants with potentially adverse interests in the tractor. This action had not been resolved at the time the briefs were filed.

On March 29, 1983, approximately one month after IHCC discovered the "out of trust" condition, IHCC filed a diversity action in federal district court against Gerald Leaders, Ardythe Leaders, Calvin Leaders, and Dorothy Leaders on the guarantee contract. The district court entered judgment in favor of IHCC in the amount of $935,826.64. This appeal followed.

### Statute of Limitations

■ Gerald and Ardythe Leaders initially argue that IHCC's action on the thirteen-year-old guarantee agreement was barred by the statute of limitations. They contend that the guarantee agreement is similar to a demand note and that action on such a note must be brought within ten years of the making of the note.

IHCC argues that this action was not barred by the ten year statute of limitations for demand notes because the guarantee, unlike a demand note, is not due at any time after its execution but is enforceable against the guarantor only after a default by the principal debtor. IHCC argues that the Leaders did not default on their debt until February 1983 and that its action on the guarantee was timely brought one month after the default.

The district court stated that the "argument analogizing the guarantee to a de-

mand promissory note or demand deposit is totally fallacious. A guarantee is *not* payable at any time; it only becomes effective upon the default of the debtor." *International Harvester Credit Corp. v. Leaders,* No. 83-22-W, slip op. at 14 (W.D. Iowa June 12, 1986).

We agree that the guarantee is not a demand note. Gerald and Ardythe Leaders cite no Iowa cases or other authority holding that a guarantee is a demand note nor have we found any support for this contention. The ten year statute of limitations period for demand notes is therefore inapplicable to the guarantee agreement.

### Laches, Waiver and Estoppel by Acquiescence

Appellants next contend that IHCC's claim on the guarantee agreement is barred by laches, waiver and estoppel. They assert that laches bars an action at law where, as in this case, the elements of an estoppel are present: (1) IHCC did not inform them of the increase in the debt of Leaders Equipment Co., (2) IHCC did not request financial statements from Dorothy and Calvin Leaders to determine if they had assets sufficient to guarantee such indebtedness, and (3) IHCC's failure to request financial statements resulted in Dorothy and Calvin Leaders not being alerted to their failure to revoke the guarantee.

The district court held that the action was a breach of contract action and no equitable relief was sought. Thus laches could not be raised as a defense. *International Harvester Credit Corp. v. Leaders,* slip op. at 13.

Under Iowa law, laches, standing alone, is not a defense to a legal action for breach of contract. *Davenport Osteopathic Hospital Ass'n v. Hospital Service,* 261 Iowa 247, 154 N.W.2d 153, 162 (1967). Laches, however, may be asserted as an affirmative defense in a breach of contract action where estoppel also exists. *Id.* Estoppel is an affirmative defense that may be raised in both legal and equitable actions; the party asserting estoppel must prove the elements by clear, convincing and satisfactory proof. *Manson State Bank v. Dia-*

*mond*, 227 N.W.2d 195, 201 (1975). To establish estoppel, the party asserting estoppel must show: (1) a misrepresentation or concealment of material facts by the other party, (2) lack of knowledge of the true facts by the party to whom the misrepresentation is made, (3) an intent to cause reliance on the misrepresentation, and (4) actual reliance on the misrepresentation to the detriment of the party to whom the representation was made. *Grandon v. Ellingson*, 259 Iowa 514, 144 N.W.2d 898, 903 (1966).

■ We hold that IHCC's action was not barred by laches [2] or estoppel because the elements of estoppel are not present in this case. Appellants point to no affirmative misrepresentation by IHCC, nor to any material facts that IHCC concealed from them. Further, although silence may be the basis of an estoppel where there is a duty to speak, the district court correctly determined that IHCC had no duty to advise the Leaders of the extent of the indebtedness of the dealership or their continuing obligations under the guarantee.

■ The Leaders next argue that IHCC waived any claims it had on the guarantee. In addition, the Leaders assert that under the related doctrine of estoppel by acquiescence, IHCC's failure to enforce its rights on the guarantee in a timely manner constitutes an abandonment of these rights.

Iowa courts define waiver as a voluntary relinquishment of a known right, made intentionally and with knowledge of the consequences. *Grandon v. Ellingson*, 144 N.W.2d at 903 (buyer did not waive a condition precedent to a contract for the sale of stock). Estoppel by acquiescence occurs when a person knows or ought to know that he or she is entitled to enforce a right and neglects to do so for such a long time that an abandonment of the right may be inferred. *Corsiglia v. Summit Center Corp.*, 348 N.W.2d 647, 650 (Iowa App. 1984). Estoppel by acquiescence is determined by an examination of the actions of the party holding the right to ascertain whether the right has been impliedly waived. *Id.*

We conclude that IHCC did not waive its rights on the guarantee nor is IHCC estopped by acquiescence from suing on the guarantee. There is no evidence from which it can be inferred that IHCC either expressly or impliedly waived its rights under the guarantee. Nor did IHCC delay in asserting its rights against the Leaders; IHCC sued about one month after the discovery of the default. *See* Note 2 *supra.*

**Unconscionability**

■ Appellants argue that the guarantee agreement is unconscionable and thus an unenforceable contract. They point to the following factors as indicative of unconscionability: (1) the contract is a contract of adhesion prepared by IHCC and International Harvester Co., (2) the guarantee is continuing, thus subjecting the guarantors to an indefinite period of potential liability, and (3) the guarantee agreement does not require IHCC to give notice to the guarantors of additional debts incurred by the dealership.

The Iowa Supreme Court has defined an unconscionable agreement as one which no person in his or her senses, and not under a delusion, would make and one which no honest or fair person would accept from the other person. *Home Federal Savings & Loan Ass'n v. Campney*, 357 N.W.2d 613, 615 (Iowa 1984). In determining whether an agreement is unconscionable, the court stated that the following factors must be examined: assent, unfair surprise, notice, disparity of bargaining power, and the substantive fairness or unfairness of the agreement. *Id.* A contract of adhesion is not automatically unconscionable, but rather must be examined in light of the factors above. *Id.*

We conclude that the agreement, although a contract of adhesion, was not unconscionable and is not the type of "ne-

---

**2.** We note that IHCC brought this action in March 1983, approximately one month after IHCC discovered the out-of-trust condition of the dealership. Thus even if laches could be asserted in this action, appellants would be unable to show that there was undue delay in the bringing of the action.

farious provision, inimical to the public good, that the doctrine of unconscionability is designed to invalidate." *Id.* at 618. Although there was a disparity of bargaining power between IHCC and appellants, there was no unfair surprise or substantive unfairness. Appellants had an opportunity to read the contract and to consult an attorney before signing it, and they do not allege that they did not understand the obligations they assumed in the guarantee. Admittedly the absence of a termination date in their guarantee means that they must be attentive to their personal liability under the guarantee agreement and must take affirmative action in order to revoke the agreement. The district court did not err in holding that the agreement was enforceable.

### Implied Revocation of the Guarantee

■ Dorothy and Calvin Leaders next argue that the district court erred in refusing to find an implied revocation of the guarantee agreement. Citing *Maresh Sheet Metal Works v. N.R.G., Ltd.,* 304 N.W.2d 436 (Iowa 1981) (*Maresh*), they argue that the district court should have considered factors other than the execution of a written revocation to determine whether there was a termination in fact of the guarantee agreement. They further contend that IHCC's knowledge of Calvin Leaders' withdrawal from the corporation, the lack of communication between Calvin and Dorothy Leaders and IHCC for nine years, and the failure of IHCC to request financial statements conclusively established that an implied revocation had occurred.

In *Maresh,* suit was brought against a guarantor who was a shareholder and former president of the debtor corporation. The guarantor established that he had been removed as president of the corporation and had not participated thereafter in the management of the corporation. Nonetheless, the Iowa Supreme Court held that

the failure of the guarantor to revoke his guarantee left him liable on the guarantee. The court rejected the guarantor's argument that he should not be bound by the guarantee because he was no longer part of the management of the corporation.[3] *Id.* at 441.

The district court concluded that there was no implied revocation. This finding is not clearly erroneous. Calvin Leaders' withdrawal from the board of directors of the dealership without more does not indicate an unambiguous intent to revoke his guarantee. Calvin Leaders did not sever all connections with the dealership after he sold his stock. He continued to be employed by the dealership until it went out of business in February 1983. In addition, Dorothy Leaders executed a guarantee with IHCC although at no time during the period of the guarantee did she participate in any way in the business of the dealership. Thus, under the facts of this case, neither a total lack of involvement nor involvement at a level other than management level gives rise to an inference that the guarantee is impliedly revoked.

### Proof of Damages

■ Gerald and Ardythe Leaders finally contend that the district court erred in assessing damages because there was no proof of damages. The guarantee, they assert, provides the only methods for determining the sum due under the guarantee: a judgment or agreement of the debtors.

This argument is meritless. In accordance with the guarantee agreement, the amount due under the agreement has been determined by the judgment of the district court. *International Harvester Credit Corp. v. Leaders,* slip op. at 12. The guarantee agreement involved in this case is a payment guarantee and IHCC is not required to await a final judgment in the bankruptcy proceeding prior to insisting

3. We note that in *Maresh Sheet Metal Works v. N.R.G., Ltd.,* 304 N.W.2d 436 (Iowa 1981), the creditor was unaware that the guarantor had been removed from the management position. The Iowa Supreme Court stated that it was not deciding whether the creditor's knowledge of

this change would have required a different result. *Id.* at 444. We are persuaded that the Iowa Supreme Court would hold that this knowledge without more does not effect a revocation.

upon payment under the guarantee from the Leaders.

We have carefully reviewed appellants' other arguments and conclude that they are meritless. Accordingly, the judgment of the district court is affirmed.