# IN THE COURT OF APPEALS OF IOWA

No. 4-055 / 13-0944
Filed March 12, 2014


**WELLS FARGO BANK, N.A.,**
　　　Plaintiff-Appellee,

**vs.**

**NANCY J. NEVINS & RE/MAX WEST REALTY, INC.,**
　　　Defendant-Appellant.
_____


　　　Appeal from the Iowa District Court for Dallas County, Brad McCall,
Judge.


　　　Nancy Nevins appeals the district court's finding she personally
guaranteed the Wells Fargo line of credit extended to her business, RE/MAX
West Realty, Inc. **AFFIRMED.**


　　　John P. Roehrick of Gaudineer, Comito & George, L.L.P., West Des
Moines, for appellant.

　　　Matthew C. Holmer of Brooks Law Firm, P.C., Davenport, for appellee.


　　　Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**VOGEL, P.J.**

Nancy Nevins appeals the district court's finding she personally guaranteed the Wells Fargo line of credit extended to her business, RE/MAX West Realty, Inc. Nevins argues the statute of frauds precludes the admission of the oral guarantee. She further asserts the district court improperly relied on the unpublished decision from this court of her dissolution of marriage when finding Nevins personally benefitted from the line of credit. While we agree with Nevins the district court improperly referenced the dissolution of marriage decision, the error was harmless. We further conclude the statute of frauds does not preclude the admission of the oral guarantee, as it was an original promise. Therefore, we affirm.

## I. Factual and Procedural Background

Nevins is the owner, president, and employee of a business, RE/MAX West Realty, Inc. (West Realty).[1] In 2006, Nevins was receiving a salary from her business of approximately $3000 each month as well as a year-end bonus. On November 13, 2006, Nevins was solicited by Wells Fargo to open a line of credit for her business. The phone conversation was recorded. During the conversation, the following exchange occurred:

> Female Voice: You personally guarantee to pay Wells Fargo upon demand all that the applicant owes on the BusinessLine account. As guarantor you authorize Wells Fargo, without notice or prior consent, to change any of the terms including the amount of credit available on the applicant's BusinessLine account . . . . If you understand and agree to these terms please respond now with a yes; if you do not please respond with a no.

---

[1] Nevins originally owned fifty-one percent of the business, and her husband, Lyle Nevins, owned forty-nine percent. However, in the distribution of assets in the dissolution of marriage, Nancy Nevins became the sole owner.

Nancy Nevins: Yes.
Female Voice: You understand and agree to these terms and conditions?
Nancy Nevins: Yes.

Checks, which were to be used to draw off the line of credit, as well as information and written terms of the agreement, were mailed to Nevins. No withdrawals were made on the account until July 3, 2008. After that time a total amount of $102,700 in cash advances were made to West Realty. West Realty subsequently defaulted on the payments, and a judgment was obtained against the company. Wells Fargo then sued Nevins personally. Trial was held on April 18, 2013, and on May 14, the district court entered a ruling finding Nevins personally liable to Wells Fargo for the outstanding balance of $103,709.10. Nevins appeals.

**II. Standard of Review**

We review the district court's ruling for errors at law. *See City of Dubuque v. Iowa Trust*, 587 N.W.2d 216, 220 (Iowa 1998).

**III. Judicial Notice**

Nevins asserts the district court improperly took judicial notice of the dissolution of marriage decision from this court between Nancy Nevins and her former husband, Lyle Nevins. Wells Fargo acknowledges that the district court erred in taking judicial notice of the decision but asserts the error is harmless.

The district court's decision stated: "Finally, as the owners of West Realty, both Nevins and her husband stood in a position that they were able to (and did) borrow money from the corporation." It then added this footnote: "*See, In re Marriage of Nevins*, No. 2-544/11-1541 (Iowa App. 2012)." Nevins objects to

this, as one factor that may be considered when determining whether the promise is original is whether the promisor personally benefitted from the contract, that is:

> In many cases where an oral promise by a stockholder, officer, or director to pay for goods or articles furnished to the corporation was held to be original and thus not within the statute of frauds, on the ground that the promise was to secure some personal benefit to the promisor . . . .

*Maresh Sheet Metal Works v. N.R.G., Ltd.*, 304 N.W.2d 436, 439 (Iowa 1981) (internal citation omitted).

While during the testimony in the present action the dissolution of marriage was mentioned several times, it does not appear that this court's decision was entered as an exhibit. We therefore agree with Nevins the district court erred in referencing the dissolution decision without the consent of the parties. *See Troester v. Sisters of Mercy Health Corp.*, 328 N.W.2d 308, 311 (Iowa 1982) ("[I]t was improper for the district court to consider or to take judicial notice of the records of the same court in a different proceeding, without an agreement of the parties.").

However, the reference was harmless, as there was ample evidence in the record for the district court to draw the same conclusion—that Nevins personally benefited from the Wells Fargo advances due to her ownership interest in, and regular salary received, from West Realty. Nevins testified the cash advances were used for daily operations, real estate taxes, and employee salaries. There were only two full time employees, Nevins and a secretary.[2] It

---

[2] Lyle testified that he was paid some year-end dividends in the early years of the company.

was her salary from West Realty which Lyle testified was the primary income source for the couple's household expenses. Moreover, it was not essential to the disposition of the case for the district court to conclude Nevins personally benefitted from the contract, considering that is only one factor in analyzing whether the promise was original and therefore outside the statute of frauds. *See Maresh Sheet Metal Works*, 304 N.W.2d at 439. Consequently, we conclude that, while the district court erred in taking judicial notice of this court's decision regarding the dissolution of marriage between Nancy and Lyle Nevins, the error was harmless.

## IV. Statute of Frauds

Nevins further argues the statute of frauds precludes the admission into evidence the transcript of Nevins's oral promise to personally guarantee the debt incurred on behalf of West Realty. She asserts this promise was collateral to the contract and therefore inadmissible because it is within the statute of frauds.

The statute of frauds is an evidentiary rule that precludes the admission of certain oral agreements. Iowa Code § 622.32 (2009). One of those instances is a promise "to answer for the debt, default or miscarriage of another." *Id.* This section applies when the promise to pay is collateral, that is, "when a promise is made in addition to an already existing contract and the surety has no personal concern in the debtor's obligation and gains no benefit from the debtor's obligation." *Gallagher, Laglas & Gallagher v. Burco*, 587 N.W.2d 615, 618 (Iowa Ct. App. 1998). However, when the promise to pay the debt of another is an original promise, the statute of frauds does not apply and the evidence may be admitted. *Johnson v. Knapp*, 36 Iowa 616, 617 (1873). As discussed above, a

factor that may be considered in determining whether the promise was original is whether the promisor personally benefitted from the promise. *Maresh Sheet Metal Works*, 304 N.W.2d at 439. Additionally, "[w]hether a promise is collateral to an existing contract or creates a primary obligation on the part of the promisor is a question of fact." *Id.* at 440.

We agree with the district court's fact finding that Nevins's promise to personally guarantee the debt is an original promise. A specific term of the agreement was that Nevins was to personally guarantee the debt. Without this promise, credit would not have been extended to the business. Therefore, not only did Nevins personally benefit from the cash advances due to her salary and ownership interest in West Realty, Wells Fargo would not have offered the line of credit had Nevins declined to personally guarantee repayment. The personal guarantee thus was a term of the offer extended by Wells Fargo and created a primary obligation on the part of Nevins. Consequently, the oral promise is not within the statute of frauds and the district court correctly admitted evidence of the oral guarantee.

Having considered the issues presented on appeal, we affirm the decision of the district court.

**AFFIRMED.**