Roger Michael GENETZKY, Appellant,

v.

IOWA STATE UNIVERSITY, Lawrence E. Evans and Phillip T. Pearson, Appellees.

No. 90–1324.

Supreme Court of Iowa.

Feb. 19, 1992.

Gregory W. Steensland, Ames, for appellant.

Bonnie J. Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and John M. Parmeter, Asst. Atty. Gen., for appellees.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and ANDREASEN, JJ.

LAVORATO, Justice.

An employee of Iowa State University sued the institution for an alleged breach of an employment contract. The employee alleged the university breached the contract when it wrongfully denied him tenure and wrongfully terminated his contract. The pivotal question is whether the matters involved in the alleged breach are "agency action" within the meaning of Iowa Code section 17A.2(9) (1983). If they are, then the employee's exclusive remedy is judicial review under Iowa Code chapter 17A, the Iowa Administrative Procedure Act (IAPA).

We hold that the matters involved in the alleged breach are agency action and affirm the district court's dismissal of the breach of contract claim. We also affirm the dismissal of the employee's defamation claim and the district court's partial summary judgment ruling in favor of the university on the employee's claim of intentional infliction of emotional distress.

On July 1, 1981, Roger Michael Genetzky entered into a written contract of employment with Iowa State University as an assistant professor in the department of veterinary clinical sciences. The department is a part of the college of veterinary medicine. He hoped to eventually become a tenure track associate professor at the university.

Over the course of his employment, personal problems arose between Genetzky and other members of the department faculty. Specifically, Dr. Richard Lundvall—then head of the equine section—allegedly made the following statements to Genetzky:

"I don't like you."

"You're incompetent."

"Don't talk to my clients."

"Don't talk to my students."

"Don't use my equipment."

On several occasions, Lundvall hurled profanity at Genetzky as well as students and other faculty members. On some of those occasions Lundvall was intoxicated. The problems between Genetzky and Lundvall escalated when Genetzky reported Lundvall's behavior. Genetzky felt that Lundvall's conduct was unprofessional and a breach of the guidelines for faculty set forth in the university faculty handbook.

Shortly after Genetzky disclosed Lundvall's actions, Genetzky received notice of the university's intent to terminate his employment as of June 30, 1985. However, a subcommittee of the faculty appeals committee found that proper procedures had not been followed in making the decision to terminate Genetzky's employment. So the faculty committee recommended that Genetzky receive an additional one year written contract commencing July 1, 1985, and ending June 30, 1986.

The new contract provided that during this one year period of employment, Genetzky's performance was to be evaluated by an external review committee. The committee's charge was to recommend whether Genetzky should be retained and granted tenure as an associate professor. The recommendation was to be based on such criteria as teaching ability, service, and research.

A university representative encouraged Genetzky to abandon the external review process because an adverse committee recommendation would damage his chances for future employment. Undaunted, Genetzky pursued the external review.

After evaluating Genetzky's qualifications, the external review committee declined to recommend that the university retain Genetzky and grant him tenure. An internal peer review committee concurred. Thereafter on January 31, 1986, the university notified Genetzky that it would not grant him tenure or reappoint him as a faculty member.

In March 1988, Genetzky filed a three count petition against the university. Count I was captioned "breach of contract and wrongful termination"; Count II was captioned "intentional infliction of emotional distress"; Count III was captioned "defamation of character."

The university answered and later moved to dismiss Counts I and III for lack of jurisdiction. The university also moved for partial summary judgment as to Count II.

The district court granted the motion to dismiss Counts I and III. The court also granted the motion for partial summary judgment as to Count II.

Genetzky appealed.

I. Four paragraphs in Count I spell out the parameters of Genetzky's breach of contract and wrongful termination claim. They include the following:

8. Pursuant to a faculty appeals committee subcommittee report, the plaintiff was given a one year written contract beginning July 1, 1985, with no salary adjustment to equal that received by members of the [veterinary clinical sciences] department for the same academic year.

9. Said contract provided that plaintiff be evaluated and reviewed by a fair and impartial jury of his peers during the 1985–86 academic year for reappointment, tenure and promotion based on criteria such as teaching ability, service, and research.

10. On or about January 31, 1986, plaintiff was notified that he would not be considered for reappointment at defendant university.

11. Defendant university breached said contract in requiring that plaintiff meet criteria which far exceeded the level required for similar faculty members who were promoted to associate professor and tenured during the five years of plaintiff's employment at [the university].

The gist of Genetzky's complaint is that the university breached his employment contract by wrongfully denying him tenure and wrongfully terminating his contract.

The issue here is whether the matters involved in the alleged breach constituted "agency action" within the meaning of Iowa Code section 17A.2(9) of the IAPA. If agency action was involved, then Genetzky should have pursued his remedy under Iowa Code chapter 17A. If agency action was not implicated, then Genetzky correctly sought relief through a common law contract action. His right to sue the university arises from the abrogation of sovereign immunity for common law breach of contract actions. *See Kersten Co. v. Department of Social Servs.*, 207 N.W.2d 117, 122 (Iowa 1973) ("[T]he State, by entering into a contract, waives its defense of governmental immunity and consents to be sued for breach thereof.").

Our resolution of the issue revolves around this court's interpretation of agency action in *Allegre v. Iowa State Bd. of Regents*, 319 N.W.2d 206 (Iowa 1982).

Agency action is broadly defined to include

the whole or a part of an agency rule or other statement of law or policy, order, decision, license, proceeding, investigation, sanction, relief, or the equivalent or a denial thereof, or a failure to act, *or any other exercise of agency discretion or failure to do so, or the performance of any agency duty or the failure to do so.*

Iowa Code § 17A.2(9) (emphasis added).

Relying on this broad definition, this court in *Allegre* held that a denial of tenure to a university employee was "agency action," subjecting the employee to the administrative remedies provided by the Iowa state board of regents. *Allegre*, 319 N.W.2d at 209. This court said that the italicized part of this provision

significantly enlarges conduct which is to be considered "agency action." We believe it is so embracive that there is little the [b]oard could do which would be excluded.

*Id.* at 208.

And this court used the following language to describe the sweeping changes chapter 17A brought about:

[W]e point to the virtually all inclusive definition of agency action in section 17A.2(9); to section 17A.23, which gives [chapter 17A] precedence over any other statute which "diminishes any right conferred or requirement imposed by [chapter 17A]"; and to that same section, which directs that chapter be broadly construed to "effectuate its purposes" and provides it shall be applicable to all agencies unless specifically exempted either by chapter 17A itself or by some

other statute specifically referring to chapter 17A by name.

*Id.* at 209.

At the heart of this controversy is Genetzky's complaint that the university wrongfully denied him tenure. The alleged wrongful conduct was the university's "require[ment] that [Genetzky] meet criteria which far exceeded the level required for similar faculty members who were promoted to associate professor and tenured during the five years of [his] employment at [the university]."

■ The decision whether to grant tenure and the criteria used to guide that decision are within the statutory mandate of the agency here and are peculiarly within its discretion and area of expertise. Clearly, then, such matters constitute agency action. *Allegre,* 319 N.W.2d at 209. So Genetzky's exclusive remedy for judicial review is under Iowa Code section 17A.19(1). For these reasons, the district court lacked jurisdiction of this particular complaint.

Had the breach involved a matter bearing "scant relation to the agency's statutory mandate or supposed area of expertise," we might have reached a different result. *Jew v. University of Iowa,* 398 N.W.2d 861, 864 (Iowa 1987) (sexual harassment claim filed by university professor against university and board of regents was not exclusively restricted to administrative agency review because action alleged to be contrary to law had very little connection with mandate of university or its supposed area of expertise and therefore was not agency action). But that is not the issue here, so we leave it for another day.

■ II. In Count III—the claim for defamation of character—Genetzky alleged that the university's conduct "caused severe damage to [his] reputation as a professional in the field of veterinary clinical sciences." We find no fault with the district court's dismissal of this count for two reasons. First, we think the court correctly concluded that the State does not waive sovereign immunity as to this type of action. *See* Iowa Code § 25A.14(4). Second,

Genetzky cites no authority and makes no argument in his brief as to any claimed error on this count. We hold that he waived error on this issue. *See* Iowa R.App.P. 14(a)(3) ("failure in the brief to state, to argue or to cite authority in support of an issue may be deemed waiver of that issue").

III. We think Genetzky also waived error as to the district court's partial summary judgment ruling on Count II, the intentional infliction of emotional distress claim. He likewise cited no authority nor made any argument in his brief on this claim.

In any event, our review of the summary judgment record leads us to conclude the district court was correct in granting the State's motion for partial summary judgment on this count. This record shows no genuine issue as to any material fact on the question (1) whether the university's conduct rose to the level of outrageous conduct or (2) whether Genetzky suffered severe emotional distress. *See* Iowa R.Civ.P. 237(c). Both are essential elements of this claim. *See Vinson v. Linn–Mar Community School Dist.,* 360 N.W.2d 108, 118 (Iowa 1984).

Finding no error we affirm.

AFFIRMED.