GALLAGHER, LANGLAS & GALLA-
GHER, A Professional Corpora-
tion, Plaintiff–Appellee,

v.

Gaylen BURCO, Defendant–Appellant,

and

Lynn L. Roose, Defendant.

No. 97–1577.

Court of Appeals of Iowa.

Oct. 29, 1998.

R.L. Van Veldhuizen, Oelwein, for appellant.

David A. Roth of Gallagher, Langlas & Gallagher, P.C., Waterloo, for appellee.

Considered by SACKETT, P.J., and HUITINK and STREIT, JJ.

STREIT, J.

A father appeals a law firm's judgment against him for guaranteeing his daughter's expenses in a custody trial over his grandchildren. Because the statute of frauds renders Burco's oral contract unenforceable, the judgment is reversed.

## I. Background Facts & Proceedings.

Lynn Roose requested the law firm Gallagher, Langlas and Gallagher, P.C. represent her in her dissolution action. Attorney Thomas Langlas signed an attorney fee contract in August 1994, and gave it to Roose to sign and return. He also requested a $2000 retainer fee. Roose never signed or returned the contract. She did not pay the retainer fee in full.

The firm represented Roose despite her not signing the contract or paying the retainer fee in full. On April 10, 1995, the Gallagher attorneys met with Roose and her father, Gaylen Burco. The attorneys told Burco about the anticipated child custody trial. The firm contends during the meeting Burco agreed to be responsible for the re-

mainder of Roose's account. Burco denies an agreement. At the end of the meeting Burco gave the firm a check for $1000 to pay the outstanding balance of $814.92 on Roose's account.

Before trial, Mary Chicchelly, an attorney with the firm, contacted Burco requesting an additional retainer to secure fees to be incurred and Burco told her, "My word as a gentleman should be enough. . . . I told Mr. Langlas I would pay and I will pay."

Roose failed to pay her legal fees. In July 1995, the attorneys sent Burco a letter requesting $5000 for Roose's legal fees or the signing of a promissory note. At the end of July, they sent Burco another letter asking him to sign a promissory note for $10,000. Neither Roose nor Burco paid the attorney fees or signed the notes. The firm represented Roose in the July 1995 trial.

After trial, Burco returned the second letter and promissory note with a notation stating he was not responsible for his daughter's attorney fees. The firm filed a motion to withdraw in July 1996 and the motion was granted.

The firm filed a petition against Burco and Roose for the unpaid legal fees. Burco denied the allegations and raised affirmative defenses of statute of frauds, revocation, and waiver. On August 6, 1997, the trial court entered a trial judgment against Burco and a default judgment against Roose for $14,-588.53. Burco appeals.

## II. Standard of Review.

■ Our review is for the correction of errors at law. The district court's findings of fact have the effect of a special verdict and are binding on us if supported by substantial evidence. Iowa R.App. P. 14(f)(1); *Waukon Auto. Supply v. Farmers & Merchants Sav. Bank*, 440 N.W.2d 844, 846 (Iowa 1989).

## III. Sufficiency of Evidence to Prove Oral Contract.

■ Burco contends the district court erred in finding there was sufficient evidence of an oral contract between himself and the law firm to pay Roose's bill.

■ The existence of an oral contract, as well as its terms and whether it was breached, are ordinarily questions for the trier of fact. *Dallenbach v. Mapco Gas Prod., Inc.*, 459 N.W.2d 483, 486 (Iowa 1990). To prove the existence of an oral contract, the terms must be sufficiently definite for a court to determine with certainty the duties of each party, the conditions relative to performance, and a reasonably certain basis for a remedy. *Netteland v. Farm Bureau*, 510 N.W.2d 162, 165 (Iowa App.1993); *Burke v. Hawkeye Nat'l. Life Ins. Co.*, 474 N.W.2d 110, 113 (Iowa 1991); *Severson v. Elberon Elevator, Inc.*, 250 N.W.2d 417, 420 (Iowa 1977); *Rest.2d Contracts* § 33 at 597 (1979). Where a contract appears to exist, courts are reluctant to find it too uncertain to be enforceable. *Audus v. Sabre Communications Corp.*, 554 N.W.2d 868, 872 (Iowa 1996). However, when the terms are not definite, courts are reluctant to impose reasonable terms on contracting parties. *Bowser v. PMX Industries, Inc.*, 545 N.W.2d 898, 900 (Iowa App.1996).

The question is, then, whether the terms of the communications between Burco and the firm were definite enough to form a contract.

At the April 10, 1996, meeting, Burco was told the estimated expense of his daughter's custody trial would be approximately $1000 per day. The firm would not guarantee Burco the trial would only last two or three days. Burco paid $1000 towards an existing $814.92 bill and said he would pay for future services. Before trial, Burco was pressed for payment or to sign a promissory note. Burco said he would pay and his word was good enough. Burco took an active part in the trial by testifying and participating in conferences with counsel during recesses.

Burco claims his guarantee to pay future legal expenses is too vague and uncertain to form a contract. The dealings described above are definite. Each party's duties are clear. The attorneys were to continue representing Roose in her custody fight. Burco was to pay her legal fees. These terms are as definite as many attorney-fee agreements. These facts are sufficient evidence to prove an oral contract existed.

The trial courts finding an oral contract existed between Burco and the firm is supported by substantial evidence. This may not suffice, however. Because the contract was in the nature of a surety or guaranty contract, the evidence or proof of the contract may have to be written. We now consider the statute of frauds.

### IV. Enforceability of Oral Contract Under the Statute of Frauds Section 622.32(2).

■ Burco next contends evidence of the oral contract is barred by the statute of frauds. Our appellate courts have held in a number of cases the statute of frauds is a rule of evidence and not of substantive law. The statute relates to the manner of proof, but does not forbid oral contracts or render them invalid. *Stauter v. Walnut Grove Products*, 188 N.W.2d 305, 313 (Iowa 1971); *Meylor v. Brown*, 281 N.W.2d 632, 634 (Iowa 1979). If the statute renders evidence of the guaranty incompetent and thus inadmissible, the judgment against Burco must be reversed. *See Maresh*, 304 N.W.2d at 437.

■ The statute of frauds requires that certain contracts be evidenced by some kind of writing before they are enforceable. The statute applies to surety contracts—a promise to a creditor to answer for debt, default, or miscarriage of another.[1]

Iowa Code section 622.32(2) codifies this doctrine:

Except when otherwise specifically provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by the party's authorized agent:

. . . .

2. Those wherein one person promises to answer for the debt, default, or miscarriage of another, including promises by executors to pay the debt of the decedent from their own estate.

Iowa Code § 622.32(2) (1997).

■ In construing Iowa Code section 622.32(2), the Iowa Supreme Court has distinguished between collateral and original promises. *Maresh Sheet Metal Works v. N.R.G., Ltd.*, 304 N.W.2d 436, 438 (Iowa 1981). Original promises are made when the promise to pay the debt of another arises out of new and original consideration between the newly contracting parties. *Id.* With an original promise the surety has a personal concern in the debtors obligation and will achieve a personal benefit out of the debtors obligation. *See id.* The "leading object of his promise is to secure some benefit or business advantage for himself." *Id.* at 439. Original promises are not within the statute of frauds. *Id.*

■ Collateral promises are made when a promise is made in addition to an already existing contract and the surety has no personal concern in the debtor's obligation and gains no benefit from the debtors obligation. The "main purpose" of the promise must not be the benefit of the surety. *Rest. (Second) of Contracts* § 116 (1979). Collateral promises fall within the statute of frauds. *Maresh*, 304 N.W.2d at 438.

■ In addition to ascertaining whether the promisor receives a benefit, we ascertain who the credit was extended to, the promisor or the party who was rendered the

---

1. The purpose of the statute of frauds in regard to surety contract is explained in the Restatement of Surety & Guaranty as follows:

In the case of secondary obligations, however, the Statute also serves the cautionary function of guarding the promisor against ill-considered action. The suretyship provision of the Statute is not limited to important or complex contracts, but applies to secondary obligations created by promises made to an obligee of the underlying obligation. Such promises serve a useful purpose, and the requirement of consideration is commonly met by the same promise or performance that is consideration for the principal obligation. However, other considerations militate in favor of requiring a writ-

ing: the motivation of the secondary obligor is often essentially gratuitous; its obligation depends on a contingency that may seem remote at the time of contracting; and natural formalities that often attend an extension of credit are unlikely to provide reliable evidence of the existence and terms of the secondary obligor's undertaking. Reliance of the kinds usual in such situations--extension of credit or forbearance to pursue the principal obligor--does not render the requirement inapplicable. It should be noted that the determination of what constitutes a writing or a signature in an environment of electronic data transmission must continue to evolve.

REST 3d SUR § 11 at 65(1995).

services.[2] *See id.* at 439; *Hudson v. Ashley,* 411 A.2d 963, 967 (D.C.App.1980)(*citing Kerner v. Eastern Dispensary & Casualty Hospital,* 214 Md. 375, 135 A.2d 303, 306–07 (1957)). This intention is ascertained from the promissory words used, the situation of the parties, and all surrounding circumstances when the promise was made. *See Hudson,* 411 A.2d at 968.

■ Whether a promise is collateral to an existing contract or creates a primary obligation on the part of the promisor is a question of fact. *Maresh,* 304 N.W.2d at 440. Thus, it is for this court to decide whether the trial court's ruling Burco's promise was original rather than collateral is supported by substantial evidence on the record. The trial court determined the promise was original rather than collateral "inasmuch as it involved his daughter and grandchild."

There is nothing in the record which supports the trial court's conclusion the promise was original rather than collateral except for a vague notion his family was affected by the matter. The evidence shows the benefit to Burco was indirect in that if his daughter won custody of his granddaughter he may get to visit her more. There is no evidence this was Burco's primary motivating factor in promising to pay his daughter's debt. From this record, it cannot be found Burco gained a benefit from his promise. This being so, his promise was collateral rather than original. There is not substantial evidence supporting the courts finding Burco made an original promise which falls outside the statute of frauds. The statute of frauds renders evidence of the contract incompetent and makes it unenforceable.

■ Once a court determines the statute of frauds applies to a contract, it must be determined if there are any exceptions that overcome the statute of frauds. One such exception, if proven, is promissory estoppel.[3] *See Meylor v. Brown,* 281 N.W.2d 632, 635 (Iowa 1979); Section 139 of *Restatement (Second) of Contracts* (1979).

Generally, Iowa cases hold promissory estoppel must be pled in order to rely on it at trial. *Midwest Management Corp. v. Stephens,* 291 N.W.2d 896, 907 (Iowa 1980). These cases, however, were decided prior to a change in the rules of pleading dispensing with the necessity of a reply to affirmative defenses in the answer. *Id.* (citing Iowa R. Civ. P. 68, 72, 73). Iowa Rule of Civil Procedure 104 provides: "(e)very defense in law or fact to any pleading must be asserted in the pleading responsive thereto, if one is required, or if none is required, then at the trial. . . ." *Id.* (citing Iowa R. Civ. P. 104).

■ The law firm was not required to file a reply to Burco's affirmative defense of the statute of frauds in order to develop the defense of promissory estoppel at trial. *Id.* (holding plaintiff was not required to file a reply to affirmative defenses before it could assert its estoppel theory at trial even though it had not pleaded estoppel). *See also Quigley v. Wilson,* 474 N.W.2d 277, 280 (Iowa App.1991)(holding because the plaintiffs were not required by rule or court order to file a reply pleading, the trial court erred in requiring the plaintiffs plead the defense of lack of consideration in response to defendant's affirmative defense before being able to develop the defense to the jury). Like Midwest, this is not a case in which the plaintiff pleads estoppel in the petition. The law firm did make a scanty reference to the basic concepts of estoppel during the trial when a firm attorney testified the firm relied on Burco's "promises" to the firm's "detriment."

**2.** The reliance of a third party on the guarantee of a secondary obligor does not negate the requirement the obligor's promise be in writing. For example: S orally promises C to guarantee the performance of any duty that D may incur to C within the ensuing year. Relying on this promise, C enters into a contract with D, by which D undertakes within the year to select materials for a house and to act as supervising architect during its construction. D, without excuse, fails to perform his contract. S's promise is within the Statute of Frauds. REST 3d SUR § 11 at 66(1995).

**3.** To prove promissory estoppel the plaintiff must prove: (1)the promisor should reasonably have expected the agreement to induce action; (2)such action was induced; and (3)enforcement is necessary to prevent injustice. *Meylor v. Brown,* 281 N.W.2d 632, 635 (Iowa 1979); *See* § 139 of Restatement (Second) of Contracts (1979).

At a minimum, however, the law firm was required to urge on appeal promissory estoppel brought Burco's promise outside the statute of frauds. "Failure in the brief to state, argue, or cite authority in support of an issue may be deemed waiver of that issue." Iowa R.App. P. 14(a)(3); *Genetzky v. Iowa State Univ.*, 480 N.W.2d 858, 861 (Iowa 1992). The firm has not preserved this issue for appeal. Because we have found the statute of frauds applies, and the law firm has not raised the doctrine of promissory estoppel on appeal, Burco's oral contract to pay the debt of his daughter may not be enforced. For these reasons, we reverse.

**REVERSED.**

HUITINK, J., concurs.

SACKETT, P.J., specially concurs.

SACKETT, J. (concurring specially)

I concur specially. I agree with the majority. I would reverse.

Defendant-appellant Gaylen Burco appeals the entry of a judgment against him and in favor of plaintiff-appellee Gallagher, Langlas & Gallagher, a Professional Corporation, engaged in the practice of law. The judgment in the amount of $14,588.53, based on an alleged oral contract, was for legal fees incurred by Burco's daughter, defendant Lynn Roose, during plaintiff's representation of her in a dissolution action.

Unlike the majority, I do not find the record to contain substantial evidence of a definite agreement to guarantee attorney fees in the amount of $14,588.53, nor do I find evidence to support a claim of promissory estoppel.

To sustain proof of an oral contract, the terms must be sufficiently definite for a court to "determine with certainty the duty of each party and the conditions relative to performance." *Burke v. Hawkeye Nat'l Life Ins. Co.*, 474 N.W.2d 110, 113 (Iowa 1991); *Severson v. Elberon Elevator, Inc.*, 250 N.W.2d 417, 420 (Iowa 1977).

While the trial court found a contract to guarantee payment of fees, the record does not reveal the terms of the guarantee. The trial court found on April 10, 1995, Burco promised to pay for future services and was given an estimate of $1000 a day for trial, plus trial preparation.

Not addressed by the trial court in its findings were several letters and billing statements which clearly contradict such findings. A letter to Roose written on April 13, 1995, following the April 10 conference, said in part:

As I had also indicated to you, this is scheduled to be a 2–1/2 day trial, which will probably take $2,500.00 in legal time over the 2–1/2 day period, including preparation for trial. I want to make it clear that I will need that $2,500.00 additional retainer fee a week prior to the trial date.

*Please thank your father for paying on your account Monday, . . . .* (Emphasis added.)

Burco contends this letter in no way reflects he agreed on April 10, 1995, to pay Roose's account in cash or by executing a promissory note or that he was guaranteeing the account. With this assertion I agree. Furthermore, it suggests $2500 in total legal fees, not the $14,588.33 claimed in this suit.

On July 14, 1995, plaintiff sent a letter to Burco that said:

Your daughter's account at our office is seriously delinquent. . . . [T]here have already been 4 days of trial and another day of trial at least is anticipated in this case. Our office has put over 100 hours in this case . . . and we anticipate that the total owing to our office when this matter is concluded will be between $5,000.00 and $7,000.00. *Obviously, Lynn has no way to pay us, and you have advanced sums on her behalf at my request before.* [1]

Lynn tells me she has forwarded to you Promissory Notes and asked you to sign them and return them to our office, but we have not received them as of the date of this letter.

If you cannot be responsible for the payment of Lynn's account at this office, I don't see how we can continue to represent her in any post trial matters which may

---

1. This language does not indicate a prior guarantee.

occur, including the possibility that the court may want written final arguments. If we do not see that we are going to be paid for services already rendered on Lynn's behalf, it is difficult to see why we should extend ourselves to render further services with no anticipation of payment.

I am enclosing a Promissory Note for you to sign in the amount of $5,000.00 to cover Lynn's expenses. Obviously if you choose to do so, you can simply deposit the sum of $5,000.00 in cash in our office and we will apply it to Lynn's account.

If either Mary Chicchelly or I have not heard from you one way or the other by Tuesday, July 18th, we will need to discuss whether or not we are in a position to render any further services to Lynn.

With the letter was a promissory note for $5000 providing, "Undersigned guarantees payment of account of his daughter, Lynn Roose, up to the amount of this note upon presentation by attorneys of statement for services at conclusion of custody trial."

On July 28, 1995, plaintiff sent the following letter to Burco that said in part:

Enclosed you will find an updated bill for representation of your daughter, Lynn, through July 27, 1995. You will note the total balance, including costs, is now over $10,000.00.... Despite frequent demands and requests by myself and Mary Chicchelly for payment on this account, *or the signing of a Promissory Note by you, you have ignored the situation.*

I am enclosing another Promissory Note *made payable to us in the amount of $10,000.00. Please be advised that unless this Promissory Note is executed and in our office by Tuesday, August 1st ... or unless this account is paid in full ... we will withdraw our representation of Lynn....* (Emphasis added.)

The promissory note enclosed with that letter said, "Undersigned guarantees payment of account of his daughter, Lynn Roose, up to the amount of this note [$10,000] upon presentation by attorneys of statement for services at conclusion of custody trial."

Burco argues while the district court's conclusion is premised on the existence of a contract of guarantee, there is no evidence of the definite terms of any agreement. This correspondence supports this proposition.

Burco also contends he was never given an accurate estimate of potential liability and he did not receive copies of the law firm's interim billings. There were nineteen billings sent by the law firm to Roose. There is no evidence any of the billings were sent to Burco. Nothing in the written correspondence talks of any guarantee on the part of Burco. The total amount of the bill is in excess of the original estimate.

Plaintiff must present substantial evidence on each element of its claim. *Swanson v. McGraw*, 447 N.W.2d 541, 542–43 (Iowa 1989). A contract is generally not found to exist when the parties agree to a contract on a basis to be settled in the future. *Air Host Cedar Rapids, Inc. v. Cedar Rapids Airport Comm'n*, 464 N.W.2d 450, 453 (Iowa 1990). Plaintiff has failed to produce substantial evidence concerning definitive terms of an agreement, not only as to the terms of payment but, more particularly, the amount guaranteed. The majority finds these terms are as definite as many attorney-fee arrangements. I would suggest they are not, nor should they be when fees are sought from someone other than a client.

Plaintiff's evidence falls short of providing evidence that would support a finding that a meeting of the minds had occurred. *See Whalen v. Connelly*, 545 N.W.2d 284, 293 (Iowa 1996). Plaintiff's contentions as to the guarantee and the amount of the guarantee are contrary to its written correspondence.

I find there is not substantial evidence to prove plaintiff had a sufficiently definite oral contract with Burco so it could be determined with certainty Burco was obligated to plaintiff in the amount of the judgment entered by the district court.

Burco contends any such claim is based on an oral contract and was a promise to pay a debt of another. He claims it would be barred by the statute of frauds. I agree with the majority there is not substantial evidence supporting the trial court's finding defendant

made an original promise which falls outside the statute of frauds.