# IN THE COURT OF APPEALS OF IOWA

No. 24-0219
Filed November 13, 2024

**SENAHID BECIROVIC and HAJRETA BECIROVIC,**
    Plaintiffs-Appellees,

**vs.**

**NEDZAD MALIC and AISA MALIC,**
    Defendants-Appellants.
_____

Appeal from the Iowa District Court for Dallas County, David Faith, Judge.

In this consolidated appeal, Nedzad and Aisa Malic challenge the district court's orders granting judgment in favor of homeowners Senahid and Hajreta Becirovic on the Becirovics' claims of breach of oral contract and violation of the consumer protection code and awarding attorney fees and costs. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

Christopher Stewart of Boles Witosky Stewart Law PLLC, Des Moines, for appellants.

Daniel M. Manning Jr., Joel Templeman, and Mason W. Burkhart of Lillis O'Malley Olson Manning Pose Templeman LLP, Des Moines, for appellees.

Heard by Tabor, C.J., Sandy, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**BOWER, Senior Judge.**

In this consolidated appeal, Nedzad and Aisa Malic challenge the district court's orders granting judgment in favor of homeowners Senahid and Hajreta Becirovic on the Becirovics' claims of breach of oral contract and violation of the consumer protection code and awarding attorney fees and costs.[1] Upon our review, we affirm in part, reverse in part, and remand with instructions.

## I.  Background Facts and Proceedings

In August 2020, the Becirovics purchased a residential lot in Urbandale and hired JB Custom Homes to build a house on the property.[2] Becirovic helped organize contractors for the project. After the basement and garage were constructed, Becivoric contacted Malic to prepare an estimate for concrete work. Becirovic was referred to Malic "[b]ecause [Malic] had a lot of experience with Speck."[3] Malic met with Becirovic at the property in mid-October. Malic "measured everything," and they discussed "the pricing, the design, the colors, [and] square footage" for the driveway, walkway, front porch, and decorative porch in the backyard. Malic followed up by sending Becirovic text messages with samples of designs and colors for the back porch. Becirovic agreed to pay Malic $13,635 for the project.

Malic completed the work in November. Within "24 hours" Becirovic noticed cracks and unlevel paving and reported his concerns to Malic. Malic "came back

---

[1] For clarity, we refer to the parties collectively as "the Becirovics" and "the Malics." We refer to Senahid and Nedvad individually as "Becivoric" and "Malic" respectively. We refer to Hajreta and Aisa by their first names.

[2] JB Custom Homes is Becirovic's brother's company.

[3] Prior to starting his own company, Malic worked at Speck USA for nearly twenty years, specializing in "concrete work."

and checked" and "said he'll fix it."  Malic replaced the front porch steps and walkway right away but said he needed to wait until warmer weather to repair the other areas.  Meanwhile, as snow melted, Becirovic noticed water entering the house through the foundation as the back porch was slanted toward the house. He also observed the driveway was not connected to the rocks and dirt below as the foundation had washed out.  He was concerned the driveway could not support weight.  When Becivoric expressed his concerns to Malic, Malic responded that the problems were caused by "intervening forces," including improper preparation and backfill by other contractors, poor weather conditions, and settlement of the dirt.  When Malic did not perform the additional repairs the following spring, Becirovic paid $4578.39 for Midwest Foundation Repair to provide a "temporary repair" to the concrete by "level[ing] up" the areas and sealing.

In August 2022, the Becirovics filed suit against Malic, claiming breach of contract, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of workmanlike construction, negligence, breach of express warranty, fraudulent misrepresentation, negligent misrepresentation, and violation of the consumer protection code under Iowa Code sections 714H.3 and 714H.5 (2022).  In February 2023, Malic filed a motion for leave to file a third-party petition against Iowa Contracting, Inc., stating it "completed some, if not all of the work performed and alleged to have been deficient by the Plaintiffs" and "any liability of Iowa Contracting, Inc. is directly tied to any of the liability of Nedzad Malic."  The district court granted the motion, and Iowa Contracting, Inc. was added as a third-party defendant.  In August 2023, the Becirovics filed a motion to amend their petition to add Aisa as a defendant.  Malic resisted the motion.  Following the

hearing, at which neither Malic nor his counsel appeared, the court granted the motion, and Aisa was added as a defendant. Shortly thereafter, Malic filed a dismissal without prejudice of the third-party petition against Iowa Contracting, Inc.

A bench trial was scheduled for October 23. The week before, Aisa filed her answer, along with a motion for leave to file a third-party petition against Edo Beganovic and R P Plumbing, stating they "completed some, if not all of the work performed and alleged to have been deficient by the Plaintiffs." The Becirovics resisted the motion. Following a hearing, the court denied Aisa's motion. The Malics filed an application for interlocutory appeal and request for stay of proceedings, which the supreme court denied.

The case proceeded to trial, during which the court heard testimony from Becirovic, Hajreta, Malic, and Aisa. Malic presented himself as his own expert, and the Becirovics presented expert testimony from Zachary Dalton. Thereafter, the court entered an order in favor of the Becirovics, finding they were entitled to compensatory damages in the amount of $30,000, which it determined was the cost to repair the damage caused by the Malics' breach of the parties' oral contract. The court found it unnecessary to reach most of the Becirovics' remaining claims,[4] but it addressed their claim alleging violations of the consumer protection code, which the court concluded the Becirovics had proved. Relating to that claim, the

---

[4] As the court noted, all but the Becirovics' claim alleging violations under Iowa Code sections 714H.3 and 714H.5 "seek compensatory damages under alternative legal theories," and because the court had found the Becirovics "are entitled to compensatory damages under Count I [alleging breach of oral contract] it is not necessary for the Court to determine whether they would also be entitled to the same damages under alternate theories."

court awarded attorney fees in the amount of $22,559.50 and costs in the amount of $405.00, to be paid by the Malics.

The Malics appealed both orders, and the supreme court consolidated their appeals and transferred the case to this court for resolution. Additional facts will be discussed below as relevant to the issues raised on appeal.

## II. Motion for Leave to Amend

At the outset, the Malics challenge the district court's denial of Aisa's motion for leave to file a third-party petition raising claims of negligence against Edo Beganovic and R P Plumbing.[5] "The trial court has considerable discretion in granting or denying a motion for leave to amend; we will reverse only when a clear abuse of discretion is shown." *Reyes v. Int'l Van Lines, Inc.*, 9 N.W.3d 793, 797 (Iowa Ct. App. 2024) (quoting *Porter v. Good Eavespouting*, 505 N.W.2d 178, 180 (Iowa 1993)). An abuse of discretion occurs when the court "exercises its discretion 'on grounds clearly untenable, or to an extent, clearly unreasonable.'" *In re Est. of Roethler*, 801 N.W.2d 833, 837 (Iowa 2011) (citation omitted). "Our real inquiry in reviewing a trial court's ruling on a motion to amend is whether the ruling lacks a solid legal basis." *Neylan v. Moser*, 400 N.W.2d 538, 543 (Iowa 1987).

Iowa Rule of Civil Procedure 1.402(4) provides the requirements to amend a pleading. It states:

> A party may amend a pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is required and the action has

---

[5] Aisa filed her motion on October 16, 2023. On the same day, the Malics collectively filed the same motion. On appeal, the Malics challenge only the court's order denying Aisa's motion.

not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise, a party may amend a pleading only by leave of court or by written consent of the adverse party. Leave to amend, including leave to amend to conform to the proof, shall be freely given when justice so requires.

Iowa R. Civ. P. 1.402(4).

The Malics claim the district court abused its discretion in denying the motion to amend as "Aisa suffered damages without the benefit of the procedural right granted to her under Iowa Rule of Civil Procedure 1.246[(1)]," which states:

At any time after commencement of the action a defending party, as a third-party plaintiff, may file a cross-petition and cause an original notice to be served upon a person not a party to the action who is or may be liable for all or part of the plaintiff's claim. The third-party plaintiff need not obtain leave to file the cross-petition if it is filed not later than ten days after the filing of the original answer. Otherwise leave may be obtained by motion upon notice to all parties to the action.

To support their contention, the Malics point to the fact Aisa "was not a party to the underlying action until September 12, 2023," and she "had not engaged in any discovery nor participated in her husband's lawsuit in any fashion prior to September 12, 2023." Accordingly, the Malics claim Aisa was not aware of potential third-party defendants "earlier in the litigation" and she "was in fact entitled to bring a third-party action as a matter of right."

"Impleader, or third-party practice, is the procedural device enabling the defendant in a lawsuit to bring into the action an additional party who may be liable to the defendant for all or part of any damages the defendant ultimately may owe the original plaintiff." *Caldwell v. Holiday Lake Owners' Ass'n, Inc.*, No. 12-2191, 2013 WL 3830217, at *3 (Iowa Ct. App. July 24, 2013) (quoting Jack H. Friedenthal, Mary Kay Kane & Arthur R. Miller, Hornbook on Civil Procedure § 6.9).

To avoid "the potential circuity and multiplicity of actions" on claims involving identical facts, our courts have "rejected a restrictive reading of Iowa's impleader rule." *Id.* (citation omitted).

The following timeline of proceedings in this case is helpful in addressing this claim:

| Aug. 25, 2022 | The Becirovics filed petition initiating lawsuit against Malic. |
|---|---|
| Oct. 26, 2022 | The district court filed an order setting trial for October 23, 2023. |
| Feb. 13, 2023 | The Becirovics filed answers to Malic's interrogatories providing contact information for "Edo Beganovic, Backfill Operator" and "Robert Palmer, R P Plumbing, L.L.C." |
| Aug. 2, 2023 | The Becirovics filed a motion for leave to amend their petition to add Aisa as a defendant. |
| Sept. 7, 2023 | The district court granted the Becirovics' motion to amend, stating in part: "At the time for hearing, Plaintiff appeared by attorney Mason Burkhart. Defendant and Counsel did not appear. The Court held that based upon a review of the file and the Motion and Resistance, that amending the Petition would not substantially change the issue in this matter and that with approximately 70 days until trial in this matter, the amendment would not prejudice the defendant. The Motion for Leave to Amend was granted." |
| Sept. 12, 2023 | The Becirovics filed an amended petition naming Aisa as a defendant. |
| Oct. 16, 2023 | Aisa filed an answer, affirmative defenses, and third-party petition raising claims of negligence against Beganovic and R P Plumbing. |
| Oct. 17, 2023 | The Becirovics filed a resistance to the third-party petition, noting it "was filed just one (1) week before trial is scheduled to commence . . . ." |
| Oct. 19, 2023 | The district court denied the motion to add claims and third-party defendants. |
| Oct. 20, 2023 | The Malics filed motion to reconsider, amend, or enlarge, which the district court denied. |
| Oct. 23, 2023 | The Malics filed an application for interlocutory appeal, discretionary review, and request for stay of proceedings. |

| Nov. 6, 2023 | The supreme court denied the Malics' application for interlocutory appeal, discretionary review, and request for stay. |
|---|---|
| Nov. 13, 2023 | The bench trial took place. |
| Jan. 9, 2024 | The district court entered an order and judgment against the Malics. |

In its order denying the Malics' motion to add third-party defendants, the district court stated in relevant part:

> The [Malics'] motion just days before trial is not based upon new information that the [Malics] have discovered. The claims and parties that [the Malics] wish to add were known or should have been known to the [Malics] at a much earlier date. There is no new evidence, new information or any failure to disclose evidence by the [Becirovics] that would excuse the failure of the [Malics] to seek such leave to amend days before trial is to commence.
>
> As pointed out in [the Becirovics'] resistance, motions to amend based on facts the defendant knew or should have known earlier in the litigation, may properly be denied by the district court judge. *Allison-Kesley Ag Ctr., Inc.* [*v. Hildebrand*], 485 N.W.2d [841,] 846 [(Iowa 1992)]; *see also Demery v. State*, [No. 13-1449, 2015 WL 5968609], at *2–3 (Iowa Ct. App. [Oct. 14,] 2015). This is because, where "[n]o good reason is shown why this new issue should not have been tendered at an earlier date, [t]he right to amend is never absolute." *Trask v. Gibbs*, 200 N.W.2d 565, 568–69 (Iowa 1972). No good reason has been shown why the additional claims and third-party defendants could not have been added at an earlier date.

However, under rule 1.246, because Aisa filed her cross-petition "not later than ten days after the filing of [her] original answer," she was not required to obtain leave by the court. Rather, the rule provides her an absolute right to add the third-party defendants. *See* Iowa R. Civ. P. 1.246. Accordingly, the denial of Aisa's motion was not within the court's discretion. We therefore reverse the district court's order denying the amended petition and remand for further proceedings relating to Aisa.

### III.    *Breach of Oral Contract*

The Becirovics' petition alleged "[o]n or about October 24, 2020," the Becirovics "entered into an oral contract with Defendants, Nedzad Malic and Aisa Malic"; "[t]he terms of the contract were clear, unambiguous and understood by all parties to the contract"; the Malics "breached the contract by failing to perform their obligations under the contract, including, but not limited to, failing to construct the project in a good and workmanlike manner and according to industry standards"; and the Becirovics "performed all of their obligations under the contract," including paying the Malics $13,365.00 "to construct the project."  The district court found the Becirovics carried their burden to prove their claim.  On appeal, the Malics contend the court erred in finding there was sufficient evidence of an oral contract between the parties and that the Malics breached the contract.[6]

Our review is for the correction of errors at law.  *Dolly Invs., LLC v. MMG Sioux City, LLC*, 984 N.W.2d 168, 173 (Iowa 2023).  The district court's findings of fact have the effect of a special verdict and are binding on us if supported by substantial evidence.  *Id.*; Iowa R. App. P. 6.904(3)(a).  "However, a district court's conclusions of law or its application of legal principles do not bind us."  *Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 110 (Iowa 2013).

---

[6] Preliminarily, the Malics claim "there is nothing in the record" to find Aisa liable under either of the Becirovics' successful claims.  We disagree.  Becirovic testified Malic told him he had "opened the company" with "his wife" and instructed him to "write [the] check to Aisa," because "she's in the company."  The Becirovics presented evidence of a text message from Malic asking Becirovic to make the check out to Aisa.  Moreover, Malic acknowledged he and Aisa now "share ownership in [the] concrete business," agreeing he is "a 70 percent owner of [the] concrete business and that [his] wife Aisa is a 30 percent owner."  We find this claim unpersuasive.

> To prove a breach of contract claim, a party must show: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach. The first three elements address the existence of a contract. The last two elements address the breach of the contract and the damages caused by the breach.

*Id.* at 110–11 (citation omitted).

### A.    Existence of Contract

The Malics first challenge the sufficiency of the evidence on the first two elements. Specifically, they claim "[t]here was no meeting of the minds" between the parties and the evidence was insufficient to "establish the terms or conditions of the contract, specifically any proof of any alleged warranties entered into by the parties."

"The existence of an oral contract, as well as its terms and whether it was breached, are ordinarily questions for the trier of fact." *Gallagher, Langlas & Gallagher v. Burco*, 587 N.W.2d 615, 617 (Iowa Ct. App. 1998). "To sustain proof of an oral contract, the terms must be sufficiently definite for a court to determine with certainty the duty of each party and the conditions relative to performance." *Seastrom v. Farm Bureau Life Ins. Co.*, 601 N.W.2d 339, 346 (Iowa 1999). If a contract appears to exist, "courts are reluctant to find it too uncertain to be enforceable." *Gallagher*, 587 N.W.2d at 617. But if "the terms are not definite, courts are reluctant to impose reasonable terms on contracting parties." *Id.*

The question is whether the communications between Malic and Becirovic were definite enough to form a contract. *See id.* At the outset, we observe Malic admitted he "entered into an agreement with [the Becirovics] to pour a concrete

driveway and decorative patio on [the Becirovics'] property"; he "performed the concrete work on [the Becirovics'] property"; and "[the Becirovics] paid [the Malics] . . . $13,365.00 to pour the driveway and patio." *See Garland v. Branstad*, 648 N.W.2d 65, 70 (Iowa 2002) (reiterating the "the well-settled rule that a party will be bound by admissions contained in a pleading"); *Iowa Mortg.*, 841 N.W.2d at 111 ("A stipulation of fact relieves a party from the inconvenience of proving the facts in the stipulation."). Moreover, contrary to the Malics' claim that "Malic continued to believe he was merely doing a favor for [the Becirovics] as family friends," the Becirovics presented evidence of text messages between Malic and Becirovic detailing pricing, providing colors and designs for the back patio, and setting forth the timing for completion of the project. Becirovic further testified to additional communications with Malic ("not everything is texting"), explaining they "talk[ed] on the phone" and "met so many times" to discuss the details of the project. Eventually, the parties reached an agreement as to pricing for "nine bucks [for] the design concrete for square foot; and 4.50, the driveway, square foot."

Although Malic testified there was "not [an] agreement," he acknowledged he "did agree to install a concrete driveway and patio on the property." And when the work was complete, Malic "said he's going to stop by [to] pick up the check."[7] Becirovic "had [a] check ready for him, [with] his name on it," but Malic asked him to "write [the] check to Aisa" instead, which Becirovic did. On this issue, the district court found:

_____

[7] Malic persisted he "never charge[d] him when I [fixed the] steps." However, we view this testimony as support for the court's finding the initial work was not completed as merely a "favor."

[The Malics] admitted in their answers to [the Becirovics'] Petition and First Amended Petition that the parties entered into an oral contract, the terms of which were clear to all parties, under which [the Malics] agreed to construct a concrete driveway and decorative concrete patio on the [the Becirovics'] property and for which [the Becirovics] agreed to pay the [Malics] for the work. . . . However, at trial [the Malics] attempted to walk back that prior admission and claim that the work was done as a "favor" owing to the cultural affinity within the tight-nit Bosnian community. [The Malics] are bound by their admissions and, even if they were not, the Court does not find it credible that they agreed to accept more than thirteen thousand dollars to perform a major construction project as a "favor."

Since the existence of the contract is admitted and there is no dispute that [the Becirovics] performed by paying what they agreed to ($13,365), the only remaining elements are terms, breach and damages. As for terms, [the Malics] are again bound by their admission, specifically, that the terms were clear to all parties. In any event, the essential terms—complete a driveway and patio contract in exchange for money—were clear enough that Mr. Malic actually performed the work. . . . While one might wish for more detail as to the exact scope and specifications of the contract, the combination of admission and performance is more than enough to show that the parties understood the essential terms.

(Internal citations omitted.)

Contrary to the case upon which the Malics rely, *Tjaden v. Rasmussen*, No. 22-1027, 2023 WL 6620326, at *3 (Iowa Ct. App. Oct. 11, 2023), the evidence presented here was more than discussions of the terms of a "proposed contract" or submission of "estimates." After exchanging information on materials and pricing, Malic sent Becirovic the following message summarizing their discussion: "You have regular concrete, 1,534 square feet at four and a half dollars, and that comes to $6,903. Decorative concrete, you will have 748 square feet, and that will be at $9. That comes to $6,732. The total will be $13,635. Thank you." Shortly thereafter, the agreed-upon work was performed (albeit unsatisfactorily), and the Becirovics paid the Malics the agreed-upon price. *See Kidwell v. Davenport*, No. 00-1255, 2002 WL 663526, at *3 (Iowa Ct. App. Apr. 24, 2002) ("The existence

of a contract does not depend on words alone. The understanding between the parties can be determined by the surrounding circumstances, acts, and conduct of the parties."). The district court's finding an oral contract existed between the Becirovics and the Malics is supported by substantial evidence. *See Seastrom*, 601 N.W.2d at 346 ("Having viewed the evidence in the light most favorable to the plaintiffs, we conclude there was substantial evidence to support their claim of oral contract.").

### B. Breach and Damages

The Malics further claim "should this court find the random and loose conversations between [the parties] established a contract, the district court erred in finding [they] breached the oral contract between the parties." Specifically, the Malics claim the court's findings concerning the cause of the concrete cracks were not supported by substantial evidence, alleging "a variety of factors came into play which were not the fault of Nedzad but instead were the fault of third parties, the state of Iowa's weather patterns, Senahid's own personal desires, and other work conducted on the [Becirovics'] property by other contractors."

On this issue, we do not review the evidence de novo. Rather, we view the evidence in the light most favorable to the judgment. *City of Forest City v. Holland Contracting Corp.*, No. 11-0782, 2012 WL 170195, at *3 (Iowa Ct. App. Jan. 19, 2012). "Evidence is substantial when reasonable minds accept the evidence as adequate to reach a conclusion. 'Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different

finding.'" *Postell v. Am. Fam. Mut. Ins. Co.*, 823 N.W.2d 35, 41 (Iowa 2012) (internal citations omitted).

Essentially, the Malics contend the court erred in relying on the testimony of the Becirovics' expert, Zachary Dalton, rather than Malic's testimony as his own expert. At trial, Dalton, a licensed contractor specializing in concrete work with over twenty years' experience, opined the Malics' work was "generally just over[all] poor craftsmanship." Regarding the driveway, Dalton opined "the concrete work . . . is of substandard quality and well below the industry standards for the Des Moines Metro Area." Regarding the front and back porches, Dalton opined "[t]he slope and slant seems to be off," resulting in the stairs "not being level with the front entry," the sidewalk panels leading to the house "hav[ing] fluctuating heights" creating a "safety hazard," and the "stoop at the main entrance and the decorative patio . . . in the backyard both slant[ing] towards the foundation of the home." Dalton acknowledged "[c]oncrete does crack" and "stamped patios are inherently uneven," but he opined the concrete should still slope away from the house so water does not enter the foundation. In sum, Dalton reported:

> In my professional opinion, the work done by Malic is defective and will need to be fully removed and reinstalled. To deliver concrete of the workmanlike quality expected in the Des Moines Metro Area, repairing the concrete to have adequate strength, grade, and proper cosmetic appearance will require a whole demolition and repour of the driveway and the patio in the backyard.
> It is my estimation and professional opinion that the cost to remove the existing front driveway and backyard patio, regrade and prep the property, and to pour the concrete in a property manner that is to industry standards would require a minimum of $30,000.00.

In contrast, Malic opined "as an expert in this field" that "the work [he] performed comported with industry standards and specifications." However, Malic

agreed there was cracking to the Becirovics' driveway, the panels were not even, the work completed "result[ed] in damage to the Becirovic property." Specifically relating to the cracks to the driveway, Malic explained, "It happens"; "It's concrete." However, when he was asked, "Would you be happy and satisfied if this is how your driveway looked just a few months after it was poured?" Malic responded, "I'd say no, I'm not going to be happy." Malic testified the poor finish of the concrete and the slope toward the foundation were caused "because dirt settled" and was "not packed correctly."

Where "the issue boiled down to a battle of the experts," "the weight to be assigned the testimony of each witness is within the province of the fact-finder." *City of Forest City*, 2012 WL 170195, at *3. Here, the district court found:

> Shortly after the project was completed, the [Becirovics] began to notice problems with the concrete, including cracking, popping and unlevel paving. Mr. Becirovic reported these concerns to Mr. Malic, who performed some repairs to the steps and walkway in front of the house, but informed [the Becirovics] that he was unable to repair the rest of the property until the weather improved and it was fit for pouring and sealing concrete. Ultimately, Mr. Malic did not perform additional repairs and in May of 2021, [the Becirovics] hired a different contractor, Midwest Foundation Repair, to fix the problems with the concrete, including sealing and leveling the concrete, at a cost of $4578.39.
> [The Becirovics] assert that the repairs by Midwest Foundation Repair were temporary, and that the concrete installed by Mr. Malic continues to be an ongoing problem, with further deterioration rendering it necessary to perform extensive additional repairs. [The Malics] dispute this, suggesting that [the Becirovics] have failed to prove that the repairs were temporary. However, [the Becirovics] submitted extensive evidence, including an expert report and live expert testimony, that Mr. Malic's concrete work was substandard and below industry standards and show significant damage as well as other issues including a downward slanting staircase, uneven service sidewalk panels, and improper concrete elevations causing segments to concrete to slant towards the foundation of the home. Mr. Malic himself admitted on cross-examination that the concrete work on the Becirovic property

resulted in damage and that he would not be happy with it for his own driveway.

The [Becirovics'] expert, Zachary Dalton, a licensed and registered contractor who runs a contracting business and has more than twenty years of experience in the industry, opined that based on the level of damage observed on the Becirovic property it would be necessary to fully remove and reinstall the concrete. He estimated that the cost to remove and pour the concrete in a proper manner to industry standard would require a minimum of $30,000. Mr. Malic presented himself as his own expert, which [the Becirovics] did not challenge, and generally denied both the severity of the damage and the asserted $30,000 cost of repairs but did not offer any comprehensive counter-analysis.

On balance, the court found Mr. Dalton's expert testimony more credible, based on superior qualifications, more comprehensive analysis of the damage, disinterest in the outcome of the matter and his comportment on the witness stand. [The Malics] attempted to discredit Mr. Dalton by pointing out minor discrepancies between his report and trial testimony elicited on cross-examination, but the court finds these actually add to his credibility since he was not defensive and readily admitted to any legitimate points. For instance, when asked about [the Malics'] theory that improper soil compaction could have contributed to the problem he agreed. He did not come off as someone there to intransigently defend a settled position. Mr. Dalton's demeanor on the witness stand, his eye contact, his conversational explanatory style, all conveyed the sense of someone trying honestly to talk through the truth and get to the correct answer. Notwithstanding the minor discrepancies pointed out by [the Malics], Mr. Dalton consistently and credibly testified that the overall qualify of the work was subpar, resulting in damages so severe that they require repairs in the nature of a comprehensive rip-out and re-do at a cost of at least $30,000. Although [the Malics] attempted to deflect blame to third parties who performed the soil compaction, and to the weather, Mr. Dalton also credibly testified that a capable contractor would have taken those factors into consideration and would not have proceeded if they were uncomfortable.

The Court finds that the preponderance of the evidence presented at trial is that the work performed or overseen by Nedzad Malic with respect to concrete work on the Becirovic property was subpar, not performed in a good and workmanlike manner, caused damage to the property, and that the cost to repair the damage is at least $30,000.

Substantial evidence supports the district court's findings. "[A]s '[t]he trier of fact,' the district court—not us—'has the prerogative to determine which

evidence is entitled to belief.'" *Doyle v. Johnny B's Constr., Inc.*, No. 23-0369, 2024 WL 1295970, at *5 (Iowa Ct. App. Mar. 27, 2024) (second alteration in original) (quoting *Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996)).

We further find substantial evidence supports the court's findings relating to damages. The Malics concede the Becirovics "are entitled to damages" to place them in as good a position as they would have occupied had the contract been performed. They argue, however, the district court's award of $30,000 is "speculative" and "inconsistent with the record," claiming they are only liable for $4578.39—the amount the Becirovics paid Midwest Foundation Repair for repairs.

"Typically, the cost of correcting the defects or completing the omissions is the proper measure of damages in a defective construction case." *Reilly Const., Co. v. Bachelder, Inc.*, No. 15-1192, 2016 WL 1696915, at *3 (Iowa Ct. App. Apr. 27, 2016) (citing *Serv. Unlimited, Inc. v. Elder*, 542 N.W.2d 855, 858 (Iowa Ct. App. 1995)). Dalton testified the work performed by the Malics was defective and needed "to be fully removed and reinstalled." He estimated "the cost to remove the existing front driveway and backyard patio, regrade and prep the property, and to pour the concrete in a property manner that is to industry standards would require a minimum of $30,000.00." The Malics disputed Dalton's testimony but failed to present any evidence to rebut it. The Malics also failed to present evidence to rebut Becirovic's testimony that Midwest's work was a "just a temporary repair." Under this record, we cannot conclude the district court erred in determining damages based on the cost of repair. *See Serv. Unlimited, Inc.*,

542 N.W.2d at 858 ("We find substantial evidence the cost of repair was not grossly disproportionate to the benefits obtained."). We affirm on this issue.

## IV. Ascertainable Loss under Section 714H.5

The Becirovics' petition alleged: "Iowa Code 714H.1 et seq., the Iowa Private Right of Action for Consumer Frauds Act (IPRACFA), gives consumers subject to certain unfair and deceptive acts and practices a private right of action"; the Becirovics "are both defined as 'consumers' pursuant to Iowa Code 714H.2(3)"; the Malics are "not in the class of entities excluded from IPRACFA under Iowa Code 714H.4"; the Malics "engaged in deception under IPRACFA" by "[m]isrepresenting that they were operating a legitimate business entity with work to be completed with competence of legitimate business in the field"; and "a result of the [Malics'] fraud, deception, and misrepresentations, [the Becirovics] have incurred damages to fix and repair the defective driveway and decorative patio constructed by [the Malics]." The IPRACFA defines "prohibited practices and acts" as follows:

> A person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes. For the purposes of this chapter, a claimant alleging an unfair practice, deception, fraud, false pretense, false promise, or misrepresentation must prove that the prohibited practice related to a material fact or facts.

Iowa Code § 714H.3(1).

The district court found the Becirovics had proved a violation of the IPRACFA by showing the Malics "were not properly registered construction contractors under Iowa Code chapter 91C at the time the work was performed on [the Becirovics'] property." Based on that prohibited act, the court granted the Becirovics' "request for costs of the action and reasonable attorney fees under Iowa Code section 714H.5(2)." That section states:

> 1. *A consumer who suffers an ascertainable loss of money or property as the result of a prohibited practice or act in violation of this chapter may bring an action at law to recover actual damages.* . . .
> 2. If the court finds that a person has violated this chapter and the consumer is awarded actual damages, the court shall award to the consumer the costs of the action and to the consumer's attorney reasonable fees.

*Id.* § 714H.5 (emphasis added).

On appeal, the Malics do not challenge the court's determination they engaged in a prohibited practice or act under section 714H.3 by failing to be licensed. Instead, they challenge the court's finding of liability, claiming in order for the court to award attorney fees and costs associated with the Becirovics' claim, it must first have awarded "actual damages" under chapter 714H.5. According to the Malics, "[h]ere, the Court did not award actual damages under Iowa Code chater 714H but instead awarded compensatory damages under [the Becirovics'] common law breach of oral contract claim." In other words, the Malics argue their "licensure status must have caused damages, outside of the damages [the Becirovics] allegedly already were faced with, to recover on their chapter 714H claim."

On this issue, the district court relied on Becirovic's testimony that "he would not have hired [the Malics] had he been aware of the true facts," *i.e.*, that the Malics

were not properly registered or licensed. Specifically, Becirovic testified as follows about the Malics' licensure status:

> Q. . . . Would you—would you have hired Mr. Malic or the Malics if you knew that Nedzad Malic was unlicensed, uninsured, and unbonded? A. Definitely no.
> . . . .
> Q. And you—you would never have incurred those damages if you had not hired the Malics? A. Correct.
> Q. And you would not be here today asking for the Court to award damages if you had hired someone other than the Malics? A. Correct.
> Q. Because if he—if the Malics had disclosed to you that they weren't licensed, weren't bonded, weren't insured, you would have hired someone else? A. Correct.
> . . . .
> Q. . . . But you agree with me that concrete cracks; right? A. Correct.
> Q. And the fact that they weren't licensed, bonded, or insured has nothing to do with your concrete cracking; correct? A. Well, safety issues. If something happens to the employee on property, he's not insured, who's going to cover that?
> Q. That didn't happen; right? A. It—that can happen.
> Q. Okay. But it didn't? A. Yeah.

Aside from this testimony, the Becirovics presented no other evidence to support their claim for damages under section 714H.5. We further note the Becirovics conceded no one was injured on the property because of the alleged deficiencies and the relevant portions of the project were in compliance with City code. Under this record, substantial evidence does not support the district court's finding the Becirovics "suffer[ed] an ascertainable loss of money or property as the result of" the Malics' licensure status. Becirovic agreed had he known the Malics weren't licensed, he "would have hired someone else." Quite simply, because the Becirovics would have spent the same amount (or potentially more) to pay a licensed concrete contractor to complete the same work they paid the Malics for, the Becirovics have not shown they sustained an ascertainable loss as a result of

the prohibited practice or act. *See Poller v. Okoboji Classic Cars, LLC*, 960 N.W.2d 496, 523 (Iowa 2021) (observing the plaintiffs failed to prove an ascertainable loss where "there is no showing that they would have paid less than this amount had [the defendant] complied with all of the provisions of the [Motor Vehicle Service Trade Practices Act,] MVSTPA"); *McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 533 (Iowa 2015) ("McKee made money on her gambling that evening, so she had no out-of-pocket loss."). Accordingly, the Becirovics may not recover "actual damages" under section 715H.5. *See* Iowa Code § 715H.2(1) (limiting recovery of actual damages to consumers who suffer an ascertainable loss as the result of the prohibited practice or act).

Under Iowa Code section 714H.5(2), attorney fees and costs may be awarded only "if a person has violated the chapter and the consumer 'is awarded actual damages.'" *Poller*, 960 N.W.2d at 524. Here, because the Becirovics are not entitled to actual damages under chapter 714H, it follows they are not entitled to an award of attorney fees and costs. *See id.* (rejecting a claim for damages under section 714H.5, noting "although we have found a violation [of the consumer fraud act], we have awarded no damages. As a result, the Pollers are not entitled to attorney fees in this action"). We therefore reverse the district court's order awarding attorney fees and costs to the Becirovics' under Iowa Code section 714H.5.

## V.    Conclusion

We reverse the district court's order denying Aisa's motion to add third-party defendants and remand for further proceedings relating to Aisa. We affirm the judgment in favor of the Becirovics on their breach-of-contract claim against the

Malics and the award of compensatory damages in the amount of $30,000. We reverse the judgment in favor of the Becirovics on their claim of violation of the consumer protection code and the award of attorney fees in the amount of $22,559.50 and costs in the amount of $405.00. We remand to the district court with instructions to enter judgment dismissing the Becirovics' claim under chapter 714H.5.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**